Kristi E. Mackin, Esq.
THELEN REID BROWN RAYSMAN & STEINER, LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                             :

OPERA SOLUTIONS LLC,               :
OPSOL GLOBAL LTD., and          :
OPERA SOLUTIONS SHANGHAI LTD.,   :
                             :

              Plaintiffs,    :

        - against –         :

XIAODONG YAN,  XDYAN, LLC and   :
DIA ASSOCIATES, LLC,       :

          Defendants.    :
                             :
------------------------------------------------------------X

**ECF CASE**

Civil Action No.08 CV 3284 (HB)

**COMPLAINT**

       Plaintiffs, Opera Solutions LLC, OpSol Global Ltd. and Opera Solutions Shanghai Ltd. (collectively, "Opera"), by and through their attorneys, Thelen Reid Brown Raysman & Steiner, LLP, as and for their Complaint against Defendants allege as follows:

<u>**THE PARTIES**</u>

       1.     Plaintiff Opera Solutions LLC (hereinafter referred to as "Opera Solutions") is a limited liability company duly organized and existing according to the laws of the State of Delaware, with a usual place of business at 17 State Street, New York, New York.  Opera Solutions is in the business of providing companies with management consulting and procurement services.

2.      Plaintiff OpSol Global Ltd. (hereinafter referred to as "OpSol Global") is a wholly–owned subsidiary of Opera Solutions LLC and is organized under the laws of Ireland. Opera Shanghai's usual place of business is at Universal House, Shannon, County Clare in Ireland.

3.      Plaintiff Opera Solutions Shanghai Ltd. (hereinafter referred to as "Opera Shanghai") is a wholly–owned subsidiary of OpSol Global and is organized under the laws of the Peoples' Republic of China. Opera Shanghai's usual place of business is at 166 East Lu Jia Zui Road, Pudong, Shanghai in the Peoples' Republic of China.

4.      Upon information and belief, Defendant Xiaodong ("Don") Yan (hereinafter referred to as "Mr. Yan") is a resident of the State of New Jersey residing at 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan was at all relevant times a Principal of Opera Solutions and Managing Director and Head of Opera's Growth Analytics Practice.

5.      Upon information and belief, Defendant XDYAN, LLC is a limited liability company organized under the laws of New Jersey ("XDYAN"). XDYAN's principal place of business is 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan is a member of XDYAN.

6.      Upon information and belief, Defendant DIA Associates, LLC is a limited liability company organized under the laws of New Jersey ("DIA"). DIA's principal place of business is 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan is a  member of DIA and its founder.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) as the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

8.     This Court has jurisdiction over Defendants because Defendants regularly conduct business in this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) in that Opera Solutions' principal place of business is located within this District.

## BACKGROUND & FACTS

10.     Opera is an international management consulting firm which combines traditional fee-for-service consulting with private equity and turnaround advisory services for its clients. Generally, the center of operations of Opera's Growth Analytics Practice is Opera Shanghai.

11.     Growth analytics is the science of analyzing large volumes of complex data for the purpose of helping a company to translate business problems into analytically-solvable problems.  To accomplish this goal on behalf of its clients, Opera has developed a proprietary six-step approach that includes creating a customized tool -- a unique model developed by Opera for its individual clients -- to identify, pull and analyze data from both the client's customers and other external sources, and to use that data to help the client to optimize its business performance.

12.     Since the inception of the Growth Analytics Practice in 2005, Opera has had strong success with this practice group, and has developed the proprietary and disciplined six-step process that results in tangible and long-term results for its clients.  Revenues from the Growth Analytics Practice have grown significantly, exceeding $25 million in 2007, and are expected to increase to over $35 million in 2008.

13.    Opera employs 130 full-time employees based in the United States; and in
Shanghai, China, it employs 75 full-time employees through its subsidiary, Opera Shanghai.

14.    Opera and its managers and employees have amassed information over the years
pertaining to the identity and unique needs of its clients, client preferences and the identity of
key client contacts and human resource personnel. This information, known very well to Mr.
Yan given his high-level position within Opera's organization and in particular as Managing
Director and Head of the Growth Analytics Practice, plus other information pertaining to Opera's
operating methods and procedures, pricing, marketing and business plans and finances is
confidential information belonging to Opera and would be of great economic and strategic value
to an existing competitor or an individual or entity seeking to compete against Opera.

15.    Opera has developed proprietary software and database management tools central
to the operation and success of its Growth Analytics Practice. These materials and information
are the property of Opera and would be of great value to an existing competitor or an individual
or entity seeking to compete against Opera. Opera protects this information from unauthorized
disclosure and dissemination to third parties.

### Mr. Yan's Engagement with Opera

16.    In mid-2004, Opera had discussions with Mr. Yan regarding the establishment of
a "state of the art" Growth Analytics Practice within Opera.

17.    As a result of those discussions, Opera engaged Mr. Yan on or about August 15,
2005, as Director of the Growth Analytics Practice, and agreed to provide him with a
$240,000.00 annual compensation, plus additional commissions, which Opera projected would
substantially increase his total compensation. Mr. Yan's total compensation from Opera in 2007
was approximately $900,000.00.

4

18.    In the position he held just before his departure from Opera, Managing Director and Head of the Growth Analytics Practice, Mr. Yan was exposed to the entirety of Opera's operations and confidential information regarding how Opera operates its business.

19.    In or about October of 2005, Mr. Yan helped establish Opera Shanghai and open Opera's offices in Shanghai, Republic of China.  In addition to his role as Managing Director and Head of Opera's Growth Analytics Practice, Mr. Yan was also the Director of OpSol Global Ltd., Opera's Irish subsidiary and direct parent of Opera Shanghai.  In addition, Mr. Yan acted as Opera's Legal Representative in China.  In that capacity, Mr. Yan acted as Opera Shanghai's official representative to the government of the People's Republic of China.

## Mr. Yan Terminates Engagement with Opera

20.    On Friday, March 7, 2008, without warning or advance notice, Mr. Yan terminated his position with Opera by sending an e-mail communication to Opera's Chief Executive Officer, Arnab Gupta.  In that e-mail communication, Mr. Yan informed Mr. Gupta that the termination of his services was "effective immediately."

21.    Prior to giving his notice to Opera, Mr. Yan recruited at least four other Opera employees key to Opera's Growth Analytics Practice:  Ivo Nikolov, Andrey Kulijiev, Jie Zhu and Haijian He.   Both Mr. Kulijiev and Mr. Nikolov held senior management positions in Opera's Growth Analytics Practice.  Upon information and belief, Mr. Yan has contacted a number of other Opera employees in an attempt to recruit them to join him in a new enterprise in competition with Opera.

22.    On or about Friday, March 7, 2008, Mr. Nikolov and Mr. Kulijiev resigned from their positions with Opera.  Like Mr. Yan, Mr. Nikolov and Mr. Kulijiev resigned without prior

notice by sending e-mail communications to Opera stating that their resignations were effective immediately.

23.    Upon information and belief, prior to submitting his resignation and at the direction of Mr. Yan, Mr. Kulijiev accessed Opera Shanghai's computers and downloaded Opera's trade secrets and confidential information, including customer data and other proprietary information.

24.    Upon information and belief, Mr. Yan is now performing growth analytic services in association with a management consulting company that is a direct competitor of Opera for Fortune 500 companies requiring high-end management consulting services.  Upon information and belief, Mr. Yan recently formed DIA with the intent to utilize this entity as a vehicle to compete against Opera and to solicit Opera's clients and employees.

25.    Because Mr. Yan's knowledge of Opera's proprietary six-step analytics process was gained at the expense of and on behalf of Plaintiffs it is inevitable that he will breach his fiduciary duties owed to Plaintiffs and disclose or use Plaintiffs' proprietary information and materials during the course of his work on behalf of or in association with Fischer Jordan, for DIA or for any other enterprise in which he markets or performs growth analytics services.

26.    Upon information and belief, Mr. Yan has also solicited at least one major client of Opera's with the intent and design to interfere with and sever Opera's relationship with this longstanding client.

### Mr. Yan Has Rebuffed Plaintiffs' Attempts to Seek Assurances Of His Compliance with His Obligations to Plaintiffs

27.    On March 21, 2008, Plaintiffs' counsel sent a letter to Mr. Yan reminding him of his continuing obligations toward Plaintiffs, demanding return of Opera property and requesting that he provide assurances that he would not continue to solicit Opera's customers or employees.

28.    Mr. Yan has not responded to that March 21, 2008 letter except that he returned a laptop, blackberry and power cord to Opera.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty of Loyalty)

29.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 28 hereof as if fully set forth at length herein.

30.    As a Principal of Opera, Managing Director and Head of Opera's Growth Analytics Practice and Director of OpSol Global Ltd., Mr. Yan held a position of trust and confidence at Opera.

31.    Both during and after his engagement with Plaintiffs, Mr. Yan owed certain fiduciary duties to Plaintiffs, including, but not limited to, a duty of loyalty and honesty. By virtue of these duties, Mr. Yan was and is prohibited from acting in a disloyal manner, or in anyway inconsistent with that trust relationship.

32.    Mr. Yan was bound to treat such confidential information as property of Plaintiffs, and not to disclose such information to third parties, or to use such information on his own account or on account of other third parties, firms and/or entities.

33.    Upon information and belief, notwithstanding these obligations and duties, and in violation thereof, Mr. Yan has breached his fiduciary duties of loyalty owed to Plaintiffs by misappropriating Plaintiffs' confidential and proprietary information.

34.    As a consequence of Mr. Yan's intentional breaches of his fiduciary duties of loyalty and honesty to Plaintiffs, Plaintiffs have been or inevitably will be injured, for which they

are entitled to recover compensatory damages and interest in an amount as proof at trial may warrant, together with punitive damages as proof at trial may warrant.

## SECOND CAUSE OF ACTION

### (Defamation)

35.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 34 hereof as if fully set forth at length herein.

36.    Upon information and belief, Mr. Yan has made various defamatory statements to third parties, including to businesses and individuals who are using, or have contemplated using, Plaintiffs' services, and to members of the business community, about Opera, including negative and false statements about Opera's business capabilities, skills and expertise.

37.    The statements made by Mr. Yan to third parties, both orally and in writing, were false and known by Mr. Yan to be false at the time they were made, and were made for the purpose of prejudicing Plaintiffs in their business dealings and holding them up to disdain or disfavor in the business community.

38.    Mr. Yan's statements constitute defamation *per se*.

39.    As a result of Mr. Yan's conduct, Plaintiffs have suffered damage to their business reputations, loss of goodwill and monetary damages.

## THIRD CAUSE OF ACTION

### (Unfair Competition)

40.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 39 hereof as if fully set forth at length herein.

41.    Upon information and belief, Mr. Yan has engaged in unfair competition by, among other things, unlawfully using Plaintiffs' confidential information, raiding Plaintiff's

work-staff and copying portions of Opera Shanghai's website verbatim onto his own site, and Plaintiffs are entitled to compensatory damages, punitive damages and interest in an amount as proof at trial may warrant, as a result of this conduct.

## FOURTH CAUSE OF ACTION

### (Misappropriation)

42.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 41 hereof as if fully set forth at length herein.

43.    Upon information and belief, Mr. Yan has intentionally and wrongfully misappropriated Plaintiffs' property, including, *inter alia*, their confidential business information.

44.    As a result of Defendants' intentional and wrongful conduct, Plaintiffs have been injured, for which it is entitled to recover compensatory damages, punitive damages and interest in an amount as the proof at trial may warrant, as proof at trial may warrant.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

45.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 44 hereof as if fully set forth at length herein.

46.    Upon information and belief, as a result of Defendants' aforesaid wrongful actions, Defendants have been, and will continue to be, unjustly enriched at Plaintiffs' expense.

47.    Plaintiffs are entitled to an accounting from Defendants and to an award of damages equal to all monies unjustly received by Defendants as a result of their aforesaid wrongful conduct, and to compensatory damages and interest in an amount which the accounting and other proof at trial will show.

## SIXTH CAUSE OF ACTION

(Interference with Contractual Relations and Prospective Business Advantage)

48.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 47 hereof as if fully set forth at length herein.

49.    Upon information and belief, by their aforesaid actions, Defendants have intentionally, maliciously and without justification interfered in and induced the breach of Plaintiffs' current and prospective contractual and/or business relationships with their customers and employees.

50.    As a result of the aforesaid wrongful actions of Mr. Yan, Plaintiffs have been injured, for which they are entitled to recover compensatory damages and interest in an amount which the proof at trial may show, together with punitive damages in the amount of $500,000.00 or such greater amount as proof at trial may warrant.

## SEVENTH CAUSE OF ACTION

(Tortious Interference with Contract)

51.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 50 hereof as if fully set forth at length herein.

52.    Mr. Yan is aware of Mr. Nikolov's, Mr. He's, and Mr. Kulijiev's contractual obligations with Plaintiffs, and upon information and belief, by his aforesaid actions, Mr. Yan has intentionally, maliciously and without justification interfered in and induced the breach of Plaintiffs' contractual relationships with Opera.

53.    As a result of the aforesaid wrongful actions of Mr. Yan, Plaintiffs have been injured, for which they are entitled to recover compensatory damages and interest in an amount

which the proof at trial may show, together with punitive damages in the amount of $500,000.00 or such greater amount as proof at trial may warrant.

## EIGHTH CAUSE OF ACTION

### (Injunction)

54.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 53 hereof as if fully set forth at length herein.

55.    Plaintiffs will suffer irreparable injury if Defendants, and all people working in concert with them, are not enjoined from: (i) using and disclosing Plaintiffs' confidential and proprietary information; (ii) interfering with relationships with Plaintiffs' clients and employees; and (iii) unfairly competing with Plaintiffs.

56.    Money damages would be inadequate to fully compensate Plaintiffs for the incalculable loss of its confidentiality, competitive edge, good will, customers, business and employee relationships, and an amount of future profits that is impossible to determine, which would result from the continued wrongful acts of Defendants.

57.    It is impossible for Plaintiffs to detect all of Mr. Yan's breaches of his fiduciary duty to Opera and/or Mr. Yan's tortious interference with Opera's employees and clients.

58.    Plaintiffs are therefore entitled to a preliminary and permanent injunction prohibiting Defendants, and all people working in concert with them, from: (i) using and disclosing Plaintiffs' confidential and proprietary information; (ii) interfering with relationships with Plaintiffs' clients and employees; and (iii) unfairly competing with Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that judgment be entered as follows:

(1)    On the FIRST CAUSE OF ACTION, awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(2)    On the SECOND CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(3)    On the THIRD CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(4)    On the FOURTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(5)    On the FIFTH CAUSE OF ACTION ordering an accounting from Defendants Mr. Yan and XDYAN, LLC and the return of all monies unjustly received by Defendants Mr. Yan and XDYAN, LLC, and awarding compensatory damages and interest to Plaintiffs in an amount that the accounting and other proof at trial will show.

(6)    On the SIXTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(7)    On the SEVENTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(8)    On the EIGHTH CAUSE OF ACTION, enjoining Mr. Yan and XDYAN, LLC from:

(a)    for a period of 12 months from the termination of Mr. Yan's relationship with Opera, soliciting Opera clients to perform growth analytics or similar services;

(b)    for a period of 12 months from the termination of Mr. Yan's relationship with Opera, entering into any business relationship with any person or entity that competes with Opera's growth analytics business;

(c)    using Plaintiffs' confidential and proprietary information in any manner or for any reason;

(d)    interfering with Plaintiffs' client and employee relationships; and

(e)    soliciting Plaintiffs' employees to terminate their employment with Plaintiffs.

(9)    AS TO ALL CAUSES OF ACTION awarding Plaintiffs their costs and disbursements incurred herein, including their attorneys' fees incurred in prosecuting this action; and

(10)    Granting Plaintiffs such other and further relief as the Court may deem just, equitable and proper.

Dated:  Hartford, CT
        April 1, 2008

                                THELEN REID BROWN RAYSMAN
                                & STEINER, LLP

                        By:_____
                                Kristi E. Mackin
                                Attorneys for Plaintiffs
                                875 Third Avenue
                                New York, New York 10022
                                (212) 603-2000

CT #169507 v6

14