UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

OPERA SOLUTIONS LLC,                           :
OPSAL GLOBAL LTD.,                             :
and OPERA SOLUTIONS SHANGHAI LTD.,            :
                                              :
                          Plaintiffs,          :          Civil Action No. 08 CV 03284
                                              :          (HB)(THK)
        - against -                            :
                                              :
XIAODONG YAN, XDYAN, LLC,                      :          NOTICE OF MOTION
DIA ASSOCIATES, LLC, IVO NIKOLOV and          :          TO DISMISS PURSUANT
ANDREY S. KULJIEV,                            :          TO F.R.C.P 12(b)(1)
                                              :
                          Defendants.          :

---------------------------------------------------------------- x

PLEASE TAKE NOTICE that upon the annexed affirmation of Marjorie E. Berman,

affirmed on May 8, 2008, and upon the exhibits attached thereto, the Affidavit of Andrey S.

Kuljiev, sworn to May 8, 2008, the Accompanying Memorandum of Law in support of this

motion, and the pleadings herein, defendants will move this Court, before the Honorable Harold

Baer, Jr., for an order pursuant to F.R.C.P. 12(b)(1) dismissing the Complaint, for lack of subject

matter jurisdiction.

Dated:      New York, New York
            May 8, 2008

                                            KRANTZ & BERMAN LLP

                                            By: _Marjorie E. Berman_____
                                            Marjorie Berman
                                            747 Third Avenue, 32nd Floor
                                            New York, New York 10017
                                            (212) 661-0009

                                            Attorneys for Defendants

To:     Mitchell Fishberg, Esq.
        Thelen Reid Brown Raysman & Steiner LLP

185 Asylum Street
City Place II, 10th Floor
Hartford, CT 06103
(By ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
OPERA SOLUTIONS LLC,                           :
OPSAL GLOBAL LTD.,                             :
and OPERA SOLUTIONS SHANGHAI LTD.,            :
                                              :
                          Plaintiffs,         :          Civil Action No. 08 CV 03284
                                              :          (HB)(THK)
            -   against -                      :
                                              :          AFFIRMATION OF
XIAODONG YAN, XDYAN, LLC,                      :          MARJORIE E. BERMAN
DIA ASSOCIATES, LLC, IVO NIKOLOV and          :          IN SUPPORT OF MOTION
ANDREY S. KULJIEV,                            :          TO DISMISS PURSUANT
                                              :          TO F.R.C.P. 12 (b)(1)
                          Defendants.         :
-------------------------------------------------------------- x

Marjorie Berman, an attorney admitted to practice before this Court, hereby affirms, under penalty of perjury as follows:

1.  I am a member of Krantz & Berman LLP, attorneys for defendants in this matter.  I submit this Affirmation in support of defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.

2.  Attached hereto as Exhibit 1 is a true and correct copy of the Amended Complaint, dated April 7, 2008.

3.  Attached hereto as Exhibit 2 is a true and correct copy of an Affidavit from defendant Andrey S. Kuljiev, sworn to May 8, 2008.

Dated:     New York, New York
           May 8, 2008

                                   **KRANTZ & BERMAN LLP**

                         By:    _Marjorie E. B_____
                                Marjorie Berman
                                747 Third Avenue, 32nd Floor
                                New York, New York 10017
                                (212) 661-0009

                                Attorneys for Defendants

George C. Springer, Jr., Esq.
THELEN REID BROWN RAYSMAN & STEINER, LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

OPERA SOLUTIONS LLC,
OPSOL GLOBAL LTD., and
OPERA SOLUTIONS SHANGHAI LTD.,

               Plaintiffs,

     - against –

XIAODONG YAN, XDYAN, LLC,
DIA ASSOCIATES, LLC, IVO NIKOLOV and
ANDREY S. KULJIEV

               Defendants.

-------------------------------------------------------------X

: **ECF CASE**
:
:
: Civil Action No. 08 CV 03284 (HB)
:
:
:
:
:
: **AMENDED COMPLAINT**
:
:
:
:
:
:

       Plaintiffs, Opera Solutions LLC, OpSol Global Ltd. and Opera Solutions

Shanghai Ltd. (collectively, "Opera"), by and through their attorneys, Thelen Reid Brown

Raysman & Steiner, LLP, as and for their Complaint against Defendants allege as follows:

**THE PARTIES**

    1.    Plaintiff Opera Solutions LLC (hereinafter referred to as "Opera Solutions") is a

limited liability company duly organized and existing according to the laws of the State of

Delaware, with a usual place of business at 17 State Street, New York, New York. Opera

Solutions is in the business of providing companies with management consulting and

procurement services.

2.      Plaintiff OpSol Global Ltd. (hereinafter referred to as "OpSol Global") is a wholly–owned subsidiary of Opera Solutions LLC and is organized under the laws of Ireland. Opera Shanghai's usual place of business is at Universal House, Shannon, County Clare in Ireland.

3.      Plaintiff Opera Solutions Shanghai Ltd. (hereinafter referred to as "Opera Shanghai") is a wholly–owned subsidiary of OpSol Global and is organized under the laws of the Peoples' Republic of China. Opera Shanghai's usual place of business is at 166 East Lu Jia Zui Road, Pudong, Shanghai in the Peoples' Republic of China.

4.      Upon information and belief, Defendant Xiaodong ("Don") Yan (hereinafter referred to as "Mr. Yan") is a resident of the State of New Jersey residing at 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan was at all relevant times a Principal of Opera Solutions and Managing Director and Head of Opera's Growth Analytics Practice.

5.      Upon information and belief, Defendant XDYAN, LLC is a limited liability company organized under the laws of New Jersey ("XDYAN"). XDYAN's principal place of business is 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan is the founder and managing member of XDYAN.

6.      Upon information and belief, Defendant DIA Associates, LLC is a limited liability company organized under the laws of New Jersey ("DIA"). DIA's principal place of business is 54 Blazier Road, Martinsville, New Jersey. Upon information and belief, Mr. Yan is the managing member of DIA and its founder.

7.      Upon information and belief, Defendant Ivo Nikolov (hereinafter referred to as "Mr. Nikolov") is a resident of the State of New Jersey residing at 700 1st Street, Hoboken, New

Jersey. Upon information and belief, Mr. Nikolov was at all relevant times an employee of Opera Solutions in New York, and since January 1, 2007, an Engagement Manager for Opera's Growth Analytics Practice.

8.     Upon information and belief, Defendant Andrey S. Kuljiev (hereinafter referred to as "Mr. Kuljiev") is a resident of the State of New York residing at 1520 York Avenue, New York, New York. Upon information and belief, Mr. Kuljiev was at all relevant times a Principal of Opera Solutions and since January 1, 2008, a Senior Vice President of Opera Shanghai.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) as the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

10.     This Court has jurisdiction over Defendants because Defendants regularly conduct business in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) in that Opera Solutions' principal place of business is located within this District.

## BACKGROUND & FACTS

12.     Opera is an international management consulting firm which combines traditional fee-for-service consulting with private equity and turnaround advisory services for its clients. Generally, the center of operations of Opera's Growth Analytics Practice is Opera Shanghai.

13.     Growth analytics is the science of analyzing large volumes of complex data for the purpose of helping a company to translate business problems into analytically-solvable problems. To accomplish this goal on behalf of its clients, Opera has developed a proprietary six-step approach that includes creating a customized tool -- a unique model developed by Opera for its individual clients -- to identify, pull and analyze data from both the client's customers and

3

other external sources, and to use that data to help the client to optimize its business performance.

14.    Since the inception of the Growth Analytics Practice in 2005, Opera has had strong success with this practice group, and has developed the proprietary and disciplined six-step process that results in tangible and long-term results for its clients. Revenues from the Growth Analytics Practice have grown significantly, exceeding $25 million in 2007, and are expected to increase to over $35 million in 2008.

15.    Opera employs 130 full-time employees based in the United States; and in Shanghai, China, it employs 75 full-time employees through its subsidiary, Opera Shanghai.

16.    Opera and its managers and employees have amassed information over the years pertaining to the identity and unique needs of its clients, client preferences and the identity of key client contacts and human resource personnel. This information, known very well to Mr. Yan, Mr. Nikolov and Mr. Kuljiev (the "Individual Defendants") given their high-level positions within Opera's organization, plus other information pertaining to Opera's operating methods and procedures, pricing, marketing and business plans and finances is confidential information belonging to Opera and would be of great economic and strategic value to an existing competitor or an individual or entity seeking to compete against Opera.

17.    Opera has developed proprietary software and database management tools central to the operation and success of its Growth Analytics Practice. These materials and information are the property of Opera and would be of great value to an existing competitor or an individual or entity seeking to compete against Opera. Opera protects this information from unauthorized disclosure and dissemination to third parties.

4

### Mr. Yan's Engagement with Opera

18.    In mid-2004, Opera had discussions with Mr. Yan regarding the establishment of a "state of the art" Growth Analytics Practice within Opera.

19.    As a result of those discussions, Opera engaged Mr. Yan on or about August 15, 2005, as Director of the Growth Analytics Practice, and agreed to provide him with a $240,000.00 annual compensation, plus additional commissions, which Opera projected would substantially increase his total compensation. Mr. Yan's total compensation from Opera in 2007 was approximately $900,000.00.

20.    In the position he held just before his departure from Opera, Managing Director and Head of the Growth Analytics Practice, Mr. Yan was exposed to the entirety of Opera's operations and confidential information regarding how Opera operates its business.

21.    In or about October of 2005, Mr. Yan helped establish Opera Shanghai and open Opera's offices in Shanghai, Republic of China. In addition to his role as Managing Director and Head of Opera's Growth Analytics Practice, Mr. Yan was also a Director of OpSol Global Ltd., Opera's Irish subsidiary and direct parent of Opera Shanghai. In addition, Mr. Yan acted as Opera's Legal Representative in China. In that capacity, Mr. Yan acted as Opera Shanghai's official representative to the government of the People's Republic of China.

### Mr. Nikolov's Employment with Opera

22.    In August of 2004, Opera had discussions with Mr. Nikolov regarding the establishment of a "state of the art" Growth Analytics Practice within Opera.

23.    As a result of those discussions, Opera hired Mr. Nikolov on or about September 21, 2004, as an Associate in Opera's Growth Analytics Practice, and agreed to provide him with an annual salary of $80,000.00, plus additional performance bonuses, which Opera projected

5

would substantially increase his total compensation. Mr. Nikolov advanced within Opera,

receiving promotions first in July of 2005 to Senior Associate in Opera's Growth Analytics

Practice with an annual salary of $100,000.00, plus additional performance bonuses, and again in

January of 2007 to Engagement Manager with an annual salary of $120,000.00, plus additional

performance bonuses.  Mr. Nikolov's total compensation from Opera in 2007 was

approximately $198,000.00.

      24.     In his capacity as an Engagement Manager in Opera's Growth Analytics Practice,

Mr. Nikolov worked for and reported to Mr. Yan and Mr. Kuljiev.

      25.     In the position he held just before his departure from Opera, Engagement

Manager in the Growth Analytics Practice, Mr. Nikolov was exposed to the entirety of Opera's

operations and confidential information regarding how Opera operates its business, especially

with respect to the operation and confidential information associated with the Growth Analytics

Practice.

### Mr. Kuljiev's Employment with Opera

      26.     In the Fall of 2004, Opera had discussions with Mr. Kuljiev regarding the

establishment of a "state of the art" Growth Analytics Practice within Opera.

      27.     As a result of those discussions, Opera hired Mr. Kuljiev on or about September

3, 2004, as an Engagement Manager in Opera's Growth Analytics Practice, and agreed to

provide him with an annual salary $140,000.00, plus additional performance bonuses, which

Opera projected would substantially increase his total compensation. Mr. Kuljiev advanced

within Opera, receiving a promotion in January of 2006 to Senior Engagement Manager, then in

January of 2007 to Associate Principal, and again in January of 2008 to Principal of Opera

Solutions and Senior Vice President of Opera Shanghai.   Mr. Kuljiev's total compensation from Opera in 2007 was approximately $370,000.00.

28.     In his capacity as an Engagement Manager of Opera's Growth Analytics Practice, a Principal of Opera and a Senior Vice President of Opera Shanghai, Mr. Kuljiev worked for and reported to Mr. Yan.

29.     In the positions he held just before his departure from Opera --- Principal of Opera and Senior Vice President of Opera Shanghai --- Mr. Kuljiev was exposed to the entirety of Opera's operations and confidential information regarding how Opera operates its business, especially with respect to the operation and confidential information associated with the Growth Analytics Practice.

### The Individual Defendants Terminate their Relationships with Opera

30.     On Friday, March 7, 2008, without warning or advance notice, Mr. Yan terminated his position with Opera by sending an e-mail communication to Opera's Chief Executive Officer, Arnab Gupta.  In that e-mail communication, Mr. Yan informed Mr. Gupta that the termination of his services was "effective immediately."

31.     Prior to giving his notice to Opera, Mr. Yan recruited at least four other Opera employees key to Opera's Growth Analytics Practice:  Mr. Nikolov, Mr. Kuljiev, Jie Zhu and Haijian He.  Both Mr. Kuljiev and Mr. Nikolov held senior management positions in Opera's Growth Analytics Practice.

32.     On or about Friday, March 7, 2008, Mr. Nikolov and Mr. Kuljiev resigned from their positions with Opera.  Like Mr. Yan, Mr. Nikolov and Mr. Kuljiev resigned without prior notice by sending e-mail communications to Opera stating that their resignations were effective immediately.

33.     Upon information and belief, prior to submitting his resignation and at the direction of Mr. Yan, Mr. Kuljiev accessed Opera Shanghai's computers and downloaded Opera's trade secrets and confidential information, including customer data and other proprietary information.

34.     Upon information and belief, the Individual Defendants have contacted a number of other Opera employees in an attempt to recruit them to join a new enterprise in competition with Opera.

35.     Upon information and belief, the Individual Defendants are now performing and/or marketing growth analytic services in association with a management consulting company that is a direct competitor of Opera for Fortune 500 companies requiring high-end management consulting services.

36.     Upon information and belief, Defendants have also solicited at least one major client of Opera's with the intent and design to interfere with and sever Opera's relationship with this longstanding client.

37.     Upon information and belief, Mr. Yan recently formed DIA with the intent to utilize this entity as a vehicle to compete against Opera and to solicit Opera's clients and employees.

38.     Because the Individual Defendants' knowledge of Opera's proprietary six-step analytics process was gained at the expense of and on behalf of Plaintiffs it is inevitable that they will breach their fiduciary duties owed to Plaintiffs and disclose or use Plaintiffs' proprietary information and materials during the course of his work on behalf of or in association with a

competing management consulting company, for DIA or for any other enterprise in which he markets or performs growth analytics services.

### The Individual Defendants Have Rebuffed Plaintiffs' Attempts to Seek Assurances Of His Compliance with His Obligations to Plaintiffs

39.    On March 21, 2008, Plaintiffs' counsel sent letters to the Individual Defendants reminding them of their continuing obligations toward Plaintiffs, demanding return of Opera property and requesting that they provide assurances that they would not continue to solicit Opera's customers or employees and/or interfere with Opera's clients and customers.

40.    Mr. Yan has not responded to that March 21, 2008 letter except that he returned a laptop, blackberry and power cord to Opera.

41.    Mr. Nikolov returned a laptop, blackberry and Verizon wireless card to Opera.

42.    Mr. Kuljiev has not responded to that March 21, 2008 letter except to state that he has returned a laptop, blackberry, hard drive and other equipment to Opera.

### FIRST CAUSE OF ACTION

(Breach of Fiduciary Duty of Loyalty -- as to the Individual Defendants)

43.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 42 hereof as if fully set forth at length herein.

44.    As a Principal of Opera, Managing Director and Head of Opera's Growth Analytics Practice and Director of OpSol Global Ltd., Mr. Yan held a position of trust and confidence at Opera.

45.    As an Engagement Manager of Opera's Growth Analytics Practice, Mr. Nikolov held a position of trust and confidence at Opera.

46.    As a Principal of Opera and a Senior Vice President of Opera Shanghai, Mr. Kuljiev held a position of trust and confidence at Opera.

47.     Both during and after their respective engagements with Plaintiffs, the Individual Defendants owed certain fiduciary duties to Plaintiffs, including, but not limited to, a duty of loyalty and honesty.  By virtue of these duties, the Individual Defendants were and are prohibited from acting in a disloyal manner, or in anyway inconsistent with that trust relationship.

48.     The Individual Defendants  are bound to treat such confidential information as property of Plaintiffs, and not to disclose such information to third parties, or to use such information on their own account or on account of other third parties, firms and/or entities.

49.     Upon information and belief, notwithstanding these obligations and duties, and in violation thereof, the Individual Defendants have breached their fiduciary duties of loyalty owed to Plaintiffs by misappropriating Plaintiffs' confidential and proprietary information.

50.     As a consequence of the Individual Defendants' intentional breaches of their fiduciary duties of loyalty and honesty to Plaintiffs, Plaintiffs have been or inevitably will be injured, for which they are entitled to recover compensatory damages and interest in an amount as proof at trial may warrant, together with punitive damages as proof at trial may warrant.

## SECOND CAUSE OF ACTION

(Defamation -- as to the Individual Defendants)

51.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 50 hereof as if fully set forth at length herein.

52.     Upon information and belief, the Individual Defendants have made various defamatory statements to third parties, including to businesses and individuals who are using, or have contemplated using, Plaintiffs' services, and to members of the business community, about Opera, including negative and false statements about Opera's business capabilities, skills and expertise.

10

53.    The statements made by the Individual Defendants to third parties, both orally and in writing, were false and known by as to the Individual Defendants to be false at the time they were made, and were made for the purpose of prejudicing Plaintiffs in their business dealings and holding them up to disdain or disfavor in the business community.

54.    The Individual Defendants' statements constitute defamation *per se*.

55.    As a result of the Individual Defendants' conduct, Plaintiffs have suffered damage to their business reputations, loss of goodwill and monetary damages.

## THIRD CAUSE OF ACTION

### (Unfair Competition – as to all Defendants)

56.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 55 hereof as if fully set forth at length herein.

57.    Upon information and belief, Defendants have engaged in unfair competition by, among other things, unlawfully using Plaintiffs' confidential information, raiding Plaintiff's work-staff and copying portions of Opera Shanghai's website verbatim onto a website controlled by Mr. Yan, and Plaintiffs are entitled to compensatory damages, punitive damages and interest in an amount as proof at trial may warrant, as a result of this conduct.

## FOURTH CAUSE OF ACTION

### (Misappropriation – as to the Individual Defendants)

58.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 57 hereof as if fully set forth at length herein.

59.    Upon information and belief, the Individual Defendants intentionally and wrongfully misappropriated Plaintiffs' property, including, *inter alia*, their confidential business information.

11

60.     As a result of the Individual Defendants' intentional and wrongful conduct, Plaintiffs have been injured, for which it is entitled to recover compensatory damages, punitive damages and interest in an amount as the proof at trial may warrant, as proof at trial may warrant.

## FIFTH CAUSE OF ACTION

(Unjust Enrichment – as to all Defendants)

61.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 60 hereof as if fully set forth at length herein.

62.     Upon information and belief, as a result of Defendants' aforesaid wrongful actions, Defendants have been, and will continue to be, unjustly enriched at Plaintiffs' expense.

63.     Plaintiffs are entitled to an accounting from Defendants and to an award of damages equal to all monies unjustly received by Defendants as a result of their aforesaid wrongful conduct, and to compensatory damages and interest in an amount which the accounting and other proof at trial will show.

## SIXTH CAUSE OF ACTION

(Interference with Contractual Relations and Prospective Business Advantage – as to all Defendants)

64.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 63 hereof as if fully set forth at length herein.

65.     Upon information and belief, by their aforesaid actions, Defendants have intentionally, maliciously and without justification interfered in and induced the breach of Plaintiffs' current and prospective contractual and/or business relationships with their customers and employees.

66.     As a result of the aforesaid wrongful actions of Defendants, Plaintiffs have been injured, for which they are entitled to recover compensatory damages and interest in an amount which the proof at trial may show, together with punitive damages in the amount of $500,000.00 or such greater amount as proof at trial may warrant.

## SEVENTH CAUSE OF ACTION

(Tortious Interference with Contract – as to Mr. Yan)

67.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 66 hereof as if fully set forth at length herein.

68.     Mr. Yan is aware of Mr. Nikolov's, Mr. He's, and Mr. Kuljiev's contractual obligations with Plaintiffs, and upon information and belief, by his aforesaid actions, Mr. Yan has intentionally, maliciously and without justification interfered in and induced the breach of Plaintiffs' contractual relationships with Opera.

69.     As a result of the aforesaid wrongful actions of Mr. Yan, Plaintiffs have been injured, for which they are entitled to recover compensatory damages and interest in an amount which the proof at trial may show, together with punitive damages in the amount of $500,000.00 or such greater amount as proof at trial may warrant.

## EIGHTH CAUSE OF ACTION

(Breach of Contract – as to Mr. Nikolov)

70.     Plaintiff Opera Solutions repeats and realleges each and every allegation set forth in Paragraphs 1 through 69 hereof as if fully set forth at length herein.

71.     In connection with his promotion to Engagement Manager, on February 17, 2005, Mr. Nikolov executed an Affiliate Confidentiality Agreement (the "Confidentiality Agreement").

72.     In signing the Confidentiality Agreement, Mr. Nikolov agreed that Opera is

entitled to safeguard its confidential business plans and financial data, all of which are valuable, special and unique assets of Opera ("Confidential Information") and that he would not make such Confidential Information available to others or to use it for his own benefit or for the benefit of any other entity other than Opera. In addition, Mr. Nikolov pledged to return all Confidential Information to Opera at the termination of his employment with Opera.

       73.    Mr. Nikolv also agreed to injunctive relief in the Confidentiality Agreement:

> [Mr. Nikolov] acknowledges that the Confidential Information is a
> unique and valuable asset of [Opera], the unauthorized disclosure
> of which would cause [Opera] irreparable harm. If there is a
> breach or threatened breach of the provisions of this Agreement by
> [Mr. Nikolov], [Opera] shall be entitled to an injunction, without
> bond, restraining [Mr. Nikolov] for such a breach. . . .

       74.    By his Confidentiality Agreement, Mr. Nikolov was prohibited from using or disclosing Opera's confidential information.

       75.    By the aforesaid actions, Mr. Nikolov has breached the Confidentiality Agreement.

       76.    As a consequence of Mr. Nikolov's breach of the Confidentiality Agreement, Opera Solutions has been or inevitably will be injured, for which it is entitled to recover compensatory damages and interest in the amount as the proof at trial may show.

### NINTH CAUSE OF ACTION

(Injunction – as to all Defendants)

       77.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 76 hereof as if fully set forth at length herein.

       78.    Plaintiffs will suffer irreparable injury if Defendants, and all people working in concert with them, are not enjoined from: (i) using and disclosing Plaintiffs' confidential and

proprietary information; (ii) interfering with relationships with Plaintiffs' clients and employees; and (iii) unfairly competing with Plaintiffs.

79.    Money damages would be inadequate to fully compensate Plaintiffs for the incalculable loss of its confidentiality, competitive edge, good will, customers, business and employee relationships, and an amount of future profits that is impossible to determine, which would result from the continued wrongful acts of Defendants.

80.    It is impossible for Plaintiffs to detect all of the Individual Defendants' breaches of fiduciary duty to Opera and/or Defendants' tortious interference with Opera's employees and clients.

81.    Plaintiffs are therefore entitled to a preliminary and permanent injunction prohibiting Defendants, and all people working in concert with them, from: (i) using and disclosing Plaintiffs' confidential and proprietary information; (ii) interfering with relationships with Plaintiffs' clients and employees; and (iii) unfairly competing with Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that judgment be entered as follows:

(1)    On the FIRST CAUSE OF ACTION, awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(2)    On the SECOND CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(3)    On the THIRD CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, and punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(4)    On the FOURTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(5)    On the FIFTH CAUSE OF ACTION ordering an accounting from Defendants Mr. Yan and XDYAN, LLC and the return of all monies unjustly received by Defendants Mr. Yan and XDYAN, LLC, and awarding compensatory damages and interest to Plaintiffs in an amount that the accounting and other proof at trial will show.

(6)    On the SIXTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(7)     On the SEVENTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiffs in an amount in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(8)     On the EIGHTH CAUSE OF ACTION awarding compensatory damages and interest to Plaintiff Opera Solutions in an amount in an amount to be proven at trial, together with punitive damages in the amount of at least $500,000.00 or such greater amount as the proof at trial may warrant.

(9)     On the NINTH CAUSE OF ACTION, enjoining Defendants from:

(a)     for a period of 12 months from the termination of the Individual Defendants' relationships with Opera, soliciting Opera clients to perform growth analytics or similar services;

(b)     for a period of 12 months from the termination of the Individual Defendants' relationships with Opera, entering into any business relationship with any person or entity that competes with Opera's growth analytics business;

(c)     using Plaintiffs' confidential and proprietary information in any manner or for any reason;

(d)     interfering with Plaintiffs' client and employee relationships; and

(e)     soliciting Plaintiffs' employees to terminate their employment with Plaintiffs.

(10)     AS TO ALL CAUSES OF ACTION awarding Plaintiffs their costs and disbursements incurred herein, including their attorneys' fees incurred in prosecuting this action; and

(11)    Granting Plaintiffs such other and further relief as the Court may deem just,

equitable and proper.

Dated:  Hartford, CT
        April 7, 2008

                                THELEN REID BROWN RAYSMAN
                                & STEINER, LLP

                                By: _s/George C. Springer, Jr._
                                    George C. Springer, Jr.
                                    Attorneys for Plaintiffs
                                    875 Third Avenue
                                    New York, New York 10022
                                    (212) 603-2000

CT #170357 v1

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
OPERA SOLUTIONS LLC,                              :
OPSAL GLOBAL LTD.,                                :
and OPERA SOLUTIONS SHANGHAI LTD.,               :
                                                  :
                            Plaintiffs,           :        Civil Action No. 08 CV 3284
                                                  :        (HB)(THK)
           -   against -                          :
                                                  :        **Affidavit of Andrey S. Kuljiev**
XIAODONG YAN, XDYAN, LLC,                         :        **in Support of Motion to Dismiss**
DIA ASSOCIATES, LLC, IVO NIKOLOV and             :
ANDREY S. KULJIEV,                               :
                                                  :
                            Defendants.           :
-------------------------------------------------------------- x

Andrey S. Kuljiev, being duly sworn, deposes and says:

1.  I am a party to this action and submit this Affidavit in support of Defendants' motion to dismiss for lack of subject matter jurisdiction. I have personal knowledge of the matters contained herein.

2.  I was born in Bulgaria and remain a citizen of Bulgaria.

3.  I am lawful permanent resident alien of the United States and on or about October 2, 2006, I obtained a "green card" evidencing that status.

4.  Since approximately 2004, I have lived and maintained my home in New York City. I currently reside at 1520 York Avenue, New York, New York and have lived there for over a year. Prior to living at this address, I lived at 1675 York Avenue, New York, New York for approximately three years.

5.  I have a vehicle which has been registered in the State of New York since approximately 2004.

6.  Since approximately 2004, I have paid personal income taxes in New York as a New York resident.

7.  I have maintained a bank accounts in New York since approximately 2004 and have maintained a brokerage account in New York for approximately 18 months.

8.  I lived in New York City during the period of time that I worked for Opera Solutions, worked largely out of the New York office and largely for clients based in New York. While I did some travel overseas and domestically while working for Opera Solutions, I always returned to my permanent home in New York City.

Dated:      New York, New York
            May 6, 2008

STATE OF NEW YORK
CITY OF NEW YORK

SUBSCRIBED AND SWORN
BEFORE ME ON ___ DAY OF MAY 2008

_____
Andrey S. Kuljiev

Sworn to before me this ___ day of May, 2008

_____
Notary Public

JOHN KARRAS
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
LIC. # 01KA6081310
COMMISSION EXPIRES OCT. 7, 2010