UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                 :  **ECF CASE**

OPERA SOLUTIONS LLC,             :
OPSOL GLOBAL LTD., and          :
OPERA SOLUTIONS SHANGHAI LTD.,  :  Civil Action No. 08 CV 03284
                                 :  (HB) (THK)
                Plaintiffs,      :
                                 :
      - against –              :
                                 :
XIAODONG YAN,  XDYAN, LLC,      :
DIA ASSOCIATES, LLC and IVO NIKOLOV  :
                               :
                Defendants.     :
                               :
----------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

George C. Springer, Jr.
Thelen Reid Brown Raysman & Steiner LLP
875 Third Avenue
New York, New York 10022-4728
Tel:  (212) 603-2000

*Attorneys for Plaintiffs*

## PRELIMINARY STATEMENT

Plaintiffs, Opera Solutions LLC, OpSol Global Ltd. and Opera Solutions Shanghai Ltd. (collectively, "Opera"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Further Support of the of their Cross-Motion for Leave to Amend the First Amended Complaint ("Motion to Amend").

In their Opposition to the Motion to Amend, Defendants argue that Andrey Kuljiev is both a necessary and indispensable party. Because complete relief can be accorded to Opera without the inclusion of Mr. Kuljiev as a party and without prejudice to the remaining parties, the Court must conclude that Mr. Kuljiev is merely a permissive party — not a necessary, much less an indispensable party. In addition, the Court must decline to abstain in favor of the pending state court action and permit this matter to proceed. Accordingly, the Motion to Amend should be granted and Opera permitted to drop the non-diverse, dispensable defendant, Andrey Kuljiev.

## ARGUMENT

## POINT I

### DEFENDANTS HAVE FAILED TO ESTABLISH THAT MR. KULJIEV IS A NECESSARY PARTY

Defendants' claim that Mr. Kuljiev is a necessary party is incorrect. Mr. Kuljiev is merely a permissive party. Under Rule 19(a) of the Federal Rules of Civil Procedure, a "party is necessary if (A) in the party's absence the court cannot accord complete relief among existing parties, or (B) that party claims an interest relating to the subject of the action and is so situated that disposing of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent liability obligations because of the

interest." Fed.R.Civ.P. 19(a)(1); *Continental Cas. Co. v. American Home Assur. Co.*, No. 05

Civ. 7874(LTS)(JCF), 2008 WL 1752231, *2 (S.D.N.Y. 2008) (attached hereto as Exhibit A).

Defendants first argue that complete relief cannot be accorded without Mr. Kuljiev.

(Defs. Obj., p. 8.)  Defendants maintain that to the extent this Court grants Opera's request for

injunctive relief such relief would not be binding on Mr. Kuljiev and that therefore Opera's relief

would be inadequate.  Defendants' reasoning is flawed.  First, "[c]omplete relief does not refer to

relief 'between a party and the absent person whose joinder is sought.'" *Arkwright-Boston Mfrs.*

*Mut. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985).  Rather, "Rule 19(a)(1) is only

concerned with whether complete relief can be accorded among the parties *present*."

*Continental Cas. Co. v. American Home Assur. Co.*, 2008 WL 1752231, *3 n.1 (Ex. A).  In the

case at bar, Opera can obtain complete relief as against the remaining defendants without the

joinder of Mr. Kuljiev.

Defendants next argue that Mr. Kuljiev is a necessary party because he has interests to

protect which he cannot protect unless he is a party to this action.  (Defs. Obj., pp. 9-11.)

Specifically, Defendants argue that Mr. Kuljiev must be joined because Opera has alleged

"specific defamatory statements attributable to Kuljiev and/or specific competitive actions by

Kuljiev[.]"  (Defs. Obj., p. 9.)

Again, Defendants misunderstand the Rule.  First, the fact that a party may have an

interest in the litigation is not sufficient to make that party necessary pursuant to Rule 19.[1]

Second, "[t]he mere fact ... that Party A, in a suit against Party B, intends to introduce evidence

that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary

---

[1] For example, it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329-330, 75 S.Ct. 865, 869 (1955); *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 132, 32 S.Ct. 641, 644 (1912). *See also Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7, 111 S.Ct. 315, 316 (1990).

party. Given the vast range of potential insults and allegations of impropriety that may be

directed at non-parties in civil litigation, a contrary view would greatly expand the universe of

Rule 19(a) necessary parties. It is therefore not surprising that cases interpreting Rule 19

consistently hold that such "slandered outsiders" need not be joined." *Intercept Sec. Corp. v.*

*Code-Alarm, Inc.*, 164 F.R.D. 215, 219 (E.D. Mich. 1995) (concluding that so-called "slandered

outsider" was not a necessary party under Rule 19(a)); *see also Pujol v. Shearson/American*

*Express, Inc.*, 877 F.2d 132, 136-37 (1st Cir. 1989) (same); *Challenge Homes, Inc. v. Greater*

*Naples Care Center, Inc.*, 669 F.2d 667, 668-71 (11th Cir. 1982) (same); *Pasco International*

*(London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 499-502 (7th Cir. 1980) (same). Clearly, even

if Mr. Kuljiev considers himself a "slandered outsider" who has an interest in defending himself

against the claims asserted in the Second Amended Defense, he is not necessary to the present

action.

Moreover, necessary parties under Rule 19(a) are "only those parties whose ability to

protect their interests would be impaired *because of* that party's absence from the litigation."

*MasterCard Int'l Inc. v. Visa Int'l Service Ass'n,* 471 F.3d 377, 387 (2d Cir.2006).

Here, Mr. Kuljiev will not be harmed as a result of his absence from this case — the Court

cannot and will not order Mr. Kuljiev to do, or to abstain from doing, anything. It follows,

therefore, that complete relief can be accorded to the remaining parties before the Court. *See*

*Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir.1996) (finding that "'complete relief'

can be accorded even without the [the absent party], because nothing in the district courts

statements or final judgment requires the [the absent party] to do anything or change any of its

positions"); *see also City of New York v. Milhelm Attea & Bros., Inc.*, --- F. Supp. 2d ---; No. 06-

CV-3620 (CBA), 2008 WL 1926686, *20 (E.D.N.Y. 2008) (same) (attached hereto as Exhibit

4

B). Because complete relief can be accorded among the remaining parties, and because nothing that happens in this action will have any binding effect on Mr. Kuljiev, this Court must conclude that he is not a necessary party.

Because Mr. Kuljiev is not a necessary party, the Court need not reach the issue of indispensability. Accordingly, the Motion to Amend must be granted, and Mr. Kuljiev dropped as a defendant from this case.

## POINT II

## MR. KULJIEV IS NOT AN INDISPENSIBLE PARTY TO THE PRESENT MATTER

Assuming, *arguendo*, that this Court concludes that Mr. Kuljiev is a necessary party, Opera's Motion to Amend must still be granted because Defendants have failed to establish that Mr. Kuljiev is an indispensable party pursuant to Rule 19(b) of the Federal Rules of Civil procedure. *See Holland v. Fahnestock & Co., Inc.,* 210 F.R.D. 487, 494 (S.D.N.Y. 2002) (*quoting Citizen Band Potawatomi Indian Tribe v. Collier,* 17 F.3d 1292, 1293 (10th Cir.1994)) (party moving for dismissal pursuant to Rule 19(b) "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.")

Moreover, in this Circuit, Rule 19(b) is applied very narrowly, and in determining whether a party is indispensable, the preference is for non-dismissal. *See Jaser v. N.Y. Prop. Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir.1987) (citations omitted)) ("The Second Circuit has observed that courts should take a 'flexible approach' under Rule 19(b) when deciding whether parties are indispensable, and that 'very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'"); *see also City of New York v.*

*Milhelm Attea & Bros., Inc.,* --- F.Supp.2d ---; No. 06-CV-3620 (CBA), 2008 WL 1926686,

*20 (E.D.N.Y. 2008) (*quoting Jaser v. N.Y. Prop. Ins. Underwriting Ass'n,* 815 F.2d at 242) (Ex.

B); *Drankwater v. Miller*, 830 F.Supp. 188, 191 (S.D.N.Y. 1993).

     Defendants' entire argument boils down to a single point: Defendants do not want to be

in Federal Court.  This position ignores the fact that Opera has the right to proceed in the forum

of its choice. *See Pasco International (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501

(7th Cir. 1980) ("Where the plaintiff can otherwise maintain a diversity action in the federal

courts, the plaintiff has an interest in the forum granted by federal law and chosen by him.").

Under Rule 19(b), the availability of an alternative forum, is not a sufficient reason for the court

to decide that an action should not proceed "among the parties present before the court." *Bio-*

*Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 453 (7th Cir. 1977), cert.

denied, 439 U.S. 820, 99 S.Ct. 84 (1978) (*citing Bonnet v. Trustees of Schools of Township 41*

*North*, 563 F.2d 831, 833 (7th Cir. 1977).  Indeed, "[t]he absence of an alternative forum would

weigh heavily, if not conclusively against dismissal while the existence of another forum would

not have as significant an impact in favor of dismissal." *Basco*, 637 F.2d at 501 n.9.

Accordingly, the fact that there is another possible forum is not dispositive to the issue of

indispensability.

     Defendants argue that Mr. Kuljiev is an indispensable party because he will be prejudiced

if the action continues in his absence.  Defendants are mistaken.  First, as set forth above, Mr.

Kuljiev will not be prejudiced by his absence from the present litigation and is therefore not a

necessary party.  It is axiomatic that a party cannot be "indispensable" if it is not "necessary."

*See Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990);

*Koppers Co. v. Aetna Cas. and Surety Co.*, 158 F.3d 170, 174 (3d Cir. 1998).  Second, an

indispensable party is one without whom an action cannot proceed, and must be joined even if by

such joinder the court loses jurisdiction over the controversy. *See Jaser*, 815 F.2d at 242.

Again, as set forth above, this action can certainly proceed without the presence of Mr. Kuljiev.

Moreover, Defendants ignore the fact that because Mr. Kuljiev can be impleaded,[2] he is not an

indispensable party. *See Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d at 1124;

*see also Abel v. Brayton Flying Serv.*, 248 F.2d 713 (5th Cir.1957); *Boone v. General Motors*

*Acceptance Corp.*, 682 F.2d 552, 553 (5th Cir.1982) (absent party not indispensable when

defendant may implead that party); *Pasco International (London) Ltd. v. Stenograph Corp.*, 637

F.2d at 505 (parties who may be impleaded under Rule 14 are never indispensable under Rule

19(b)).

 For all the foregoing reasons, and for the reasons set forth in Opera's initial

Memorandum of Law in Support of Motion to Amend, Mr. Kuljiev is not an indispensable party.

Accordingly, Opera's Motion to Amend should be granted, and the non-diverse, dispensable

defendant, Mr. Kuljiev, dropped from the case,

**POINT III**

**THIS COURT SHOULD DECLINE TO ABSTAIN
IN DEFERANCE TO PLAINTIFF'S PENDING STATE ACTION**

 Defendants finally argue that even if this Court were to conclude that Mr. Kuljiev is not a

necessary or an indispensable party, Opera's amendment would "still be futile" and this Court

should exercise its discretion under the *Colorado River Doctrine* and abstain in deference to

Opera's pending state action. (Defs. Obj., p. 15.) The focus of Defendants' argument remains

the same as that made above: they do not want to be in Federal Court. Defendants' desire to

avoid this forum can not trump Opera's right to proceed in the forum of its choice.

---

[2] That Defendants do not *want* to implead Mr. Kuljiev is not relevant to the inquiry here. (*See* Defs. Obj., p. 10 n.2.)

In assessing whether to dismiss or stay an action under the *Colorado River Doctrine* a court should consider: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; and (3) the order in which the concurrent actions were initiated. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246 (1976); *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1126 (2d Cir. 1990).

The case of *Associated Dry Goods* is particularly instructive here. In that case, the defendant argued that the pendency of a state court suit rendered the exercise of federal jurisdiction unnecessary and requested the Court to dismiss the action, or to stay the action pending resolution of the parallel state court action. *Id.* The Court denied the request, reasoning that the federal forum was equally convenient to the parties and that the federal suit was instituted prior to the state court suit. Moreover, the Court concluded that concerns about piecemeal litigation were without merit stating, "after this action is reinstated, the parties may move to dismiss the state court suit and avoid 'piecemeal' litigation." *Id.*

Similarly, in the present case, as Defendants have acknowledged, the federal forum is just as convenient to all parties as is the state court. (Defs. Obj., p. 16.) Additionally, as in *Associated Dry Goods*, Opera instituted the federal action first. As to the risk of piecemeal litigation, the concern here is to avoid risk of "inconsistent outcomes not preventable by principles of *res judicata* and collateral estoppel." *Woodford v. Community Action Agency of Greene County Inc.*, 239 F.3d 517, 524 (2d Cir. 2001). Here, there is no risk of inconsistent outcomes as to Mr. Kuljiev, and once Opera's Motion to Amend has been granted, the remaining Defendants here can move to dismiss the state action as to them.

For all the foregoing reasons, Defendants' request that this Court abstain in deference to the proceeding in state court is without merit, and Opera's right to proceed in the forum of its

8

choice must be honored.  Accordingly, Opera requests that its Motion to Amend be granted and

the non-diverse defendant, Mr. Kuljiev, be dropped from this case.

## CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that the Court deny

Defendants' Motion to Dismiss and to grant Opera's Motion for Leave to Amend the First

Amended Complaint.

Dated: New York, New York
       June 12, 2008

                    Respectfully submitted,

                    THELEN REID BROWN RAYSMAN &
                    STEINER LLP

                    By: /s/ George C. Springer, Jr.
                         George C. Springer, Jr.
                         875  Third Avenue
                         New York, New York 10022
                         (212) 603-2000
                         Attorneys for Plaintiffs

CT #173115 v2

# EXHIBIT A

Westlaw.

Slip Copy
Slip Copy, 2008 WL 1752231 (S.D.N.Y.)
**(Cite as: 2008 WL 1752231 (S.D.N.Y.))**

Continental Cas. Co. v. American Home Assur. Co.
S.D.N.Y.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
CONTINENTAL CASUALTY COMPANY, et al.,
Plaintiffs,
v.
AMERICAN HOME ASSURANCE COMPANY, et
al., Defendants.
No. 05 Civ. 7874(LTS)(JCF).

April 14, 2008.

*MEMORANDUM OPINION AND ORDER*

LAURA TAYLOR SWAIN, District Judge.
**\*1** In this action brought against Defendants
American Home Assurance Company ("AHA") and
Foamex, L.P. ("Foamex"), Plaintiffs Continental
Casualty Company ("Continental") and Sealy, Inc.
("Sealy") assert several causes of action relating to
AHA's obligations under certain insurance policies,
and Foamex's obligations pursuant to an agreement
between Foamex and Sealy. This matter comes
before the Court on the motion of Defendants to
dismiss the Amended Complaint pursuant to Rule
12(b)(7) of the Federal Rules of Civil Procedure for
failure to join a necessary and indispensable party.
The Court has diversity jurisdiction of this action
pursuant to 28 U.S.C. § 1332.

The critical issue in this case is whether Sealy
Mattress Manufacturing Company ("Sealy
Mattress"), an affiliate of Sealy, is a necessary and
indispensable party to the action. The Court has
considered thoroughly all the parties' submissions
and, for the following reasons, Defendants' motion to
dismiss the Amended Complaint is denied.

*BACKGROUND*

The following facts are taken as true for purposes of
the instant motion practice. Plaintiff Continental is an
Illinois corporation with its home office in Chicago,
Illinois. (Am.Compl.¶ 2.) Plaintiff Sealy is an Ohio
corporation with its principal place of business in

Trinity, North Carolina. (*Id.* ¶ 3.) Defendant
American Home Assurance is a New York
corporation with its principal place of business in
New York, New York. (*Id.* ¶ 4.) Defendant Foamex
is a Delaware limited partnership whose members are
citizens of Delaware and Pennsylvania. (*Id.* ¶¶ 5-
7.)Defendants assert that if Sealy Mattress, a
Delaware corporation, were joined, diversity
jurisdiction would be lacking.

At the time of the transactions underlying the claims
asserted here, Foamex was in the business of
developing, manufacturing, and supplying flexible
polyurethane foam for bedding. (*Id.* ¶ 13.)Sealy was
in the business of manufacturing mattress and
foundation products. (*Id.* ¶ 14.)On January 1, 2002,
Sealy and Foamex entered into an agreement (the
"Supply Agreement") under which Sealy agreed to
sell baled mattress scrap to Foamex and Foamex
agreed to purchase the same from Sealy. (*Id.* ¶¶ 15,
19.)The Supply Agreement recited that Foamex
"agrees to extend to each of Sealy's Affiliates
('Affiliates'), either held by Sealy or Sealy's owner
Bain Funds[,] the same terms and conditions of this
agreement."(*Id.* ¶ 16.)At all relevant times, Bain
Funds had a significant ownership interest in Sealy
Mattress. (*Id.* ¶ 18.)The Supply Agreement further
required Foamex to obtain commercial general
liability insurance and commercial automobile
insurance, and name Sealy as an additional insured
thereunder. (*Id.* ¶ 25.)Foamex was required to
provide "Sealy Affiliates," such as Sealy Mattress,
with this same coverage. (*Id.* ¶ 27.)Sealy was added
as an additional insured under policies that AHA
issued to Foamex. (*Id.* ¶ 28.)

**\*2** On September 25, 2002, Delbert Wardwell, Sr.
("Wardwell"), while acting in the course of his
employment with Foamex, was seriously injured
while attempting to unload a trailer on Foamex's
premises containing bundles of Sealy's baled mattress
scrap. (*Id.* ¶ 20.)On or about December 31, 2002,
Wardwell filed suit against Sealy Mattress and
Satterfield Trucking Corporation, alleging negligent
failure to properly load the bundles of bedding in the
truck, among other allegations. (*Id.* ¶¶ 22, 23.)In July
2003, Sealy advised Foamex of the lawsuit and
indicated that it would be filing a claim for defense

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and indemnity with Foamex's insurer, AHA. (*Id.* ¶ 36.)In May 2004, AHA disclaimed any obligation to defend or indemnify Sealy in connection with the Wardwell suit, citing the indemnification provision in the Supply Agreement, the language of the additional insured endorsements, and certain exclusions contained in AHA's insurance policies. (*Id.* ¶ 40.)As a result of AHA's denial of an obligation to defend and indemnify, Sealy's own insurance carrier, Continental, defended and indemnified Sealy Mattress in the suit.(*Id.* ¶ 44.)On September 12, 2005, Sealy Mattress and Satterfield settled with Wardwell. (*Id.* ¶ 24.)Continental and Sealy's share of this amount was $900,000. (*Id.*)

Plaintiffs Continental and Sealy seek relief in the form of a declaration that AHA has a duty to defend and indemnify Sealy and its Affiliates in connection with the underlying claims. (*Id.* ¶ 77.)Plaintiffs also seek consequential, compensatory and punitive damages for breach of contract against AHA and Foamex. (*Id.*)

## DISCUSSION

Defendants move to dismiss the Amended Complaint pursuant to <u>Federal Rule of Civil Procedure 12(b)(7)</u> on the ground that Plaintiffs have failed to name Sealy Mattress as a necessary and indispensable party pursuant to <u>Federal Rule of Civil Procedure 19</u>.

### *Fed.R.Civ.P. 19 Standard*

<u>Rule 19</u> governs whether Sealy Mattress is an indispensable party to this litigation. The rule establishes a two-step process for determining whether an action should be dismissed for non-joinder. First, the Court must evaluate whether the party is "necessary" under <u>rule 19(a)(1)</u>. A party is necessary if (A) in the party's absence the court cannot accord complete relief among existing parties, or (B) that party claims an interest relating to the subject of the action and is so situated that disposing of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect the interest, or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent liability obligations because of the interest. <u>Fed.R.Civ.P. 19(a)(1)</u>. If a party is deemed necessary, then it must be joined if feasible. *Id.*

Second, if joinder is infeasible because it would deprive the court of jurisdiction, the Court proceeds under <u>Rule 19(b)</u> to determine whether "in equity and good conscience" the action should continue among the existing parties or be dismissed. <u>Rule 19(b)</u> lists four factors to consider in determining whether a party is indispensable: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing party; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. <u>Fed.R.Civ.P. 19(b)</u>. Therefore, if a party is found to be necessary pursuant to <u>Rule 19(a)(1)</u> but joinder is infeasible, the action should only be dismissed if that party is also found to be indispensable pursuant to <u>Rule 19(b)</u>.*Polargrid v. VSNL,* No. 04 Civ. 9578, 2006 WL 2266351, *9 (S.D.N.Y. Aug. 7, 2006).

**\*3** For the following reasons, the Court finds that Sealy Mattress is not a necessary party, and therefore need not reach the issue of indispensability.

### *A. Rule 19(a)(1)(A): Can Complete Relief Be Granted Among Present Parties?*

A party is deemed necessary to a litigation if, in the party's absence, complete relief cannot be granted among the parties present. <u>Fed.R.Civ.P. 19(a)(1)(A)</u>. This prong of the rule "stresses the desirability of joining those persons in whose absence the court would be obligated to grant partial or 'hollow' rather than complete relief to the parties before the court."<u>Fed.R.Civ.P. 19</u> (advisory committee's note). Here, complete relief can be granted among the parties present because every party from or against whom Plaintiffs seek relief on this matter is named as a defendant. Thus, there is no risk that the court will have to grant Plaintiffs "hollow" relief. Complete relief does not refer to relief "between a party and the absent person whose joinder is sought."*Arkwright-Boston Mfrs. Mut. v. City of New York,* 762 F.2d 205, 209 (2d Cir.1985).

Defendants improperly interpret the Second Circuit's decision in *Arkwright* to mean that, in a subrogation

Slip Copy                                                                                Page 3
Slip Copy, 2008 WL 1752231 (S.D.N.Y.)
(Cite as: 2008 WL 1752231 (S.D.N.Y.))

suit brought by an insurer, the insured (here, Sealy Mattress) is always a necessary party. *Arkwright-Boston* only dealt with partial subrogation. *Id.* A partial subrogation case is one in which the insurer has only paid for part of the insured's loss, and the insurer brings a claim against a third party for the amount the insurer paid. In such instances, both parties may reasonably be considered "necessary." Otherwise, the insurer and insured might bring separate suits on the same claim against the third party, and "complete" relief might not be available in a single suit.[FN1] If an insurer has paid the entire loss suffered by the insured, however, the insurer is the only real party in interest, and there is no concern that complete relief cannot be granted in a single action. *See Royal Ins. Co. of Am. v. United States,* 998 F.Supp. 351, 353 (S.D.N.Y.1998) (holding that a fully subrogated insurer must sue in its own name). In the instant case, Continental paid Sealy Mattress's entire loss. As a result, Continental is the only real party in interest on the subrogation claim and can be granted complete relief.

> FN1. Despite this logic, Rule 19(a)(1) is only concerned with whether complete relief can be accorded among the parties *present.* Therefore, even in a partial subrogation case, the insured should not be considered a necessary party since the insurer can obtain "complete relief" for its own losses without the insured being joined.

Defendants also rely on *Global Discount Travelers v. TWA,* 960 F.Supp. 701 (S.D.N.Y.1997), for the proposition that "complete" relief cannot be granted in Sealy Mattress' absence. Although the court in *Global Discount* held that complete relief could not be granted without the absent party, the absent party at issue was a direct party to the contract in dispute, and was entitled to the same rights as the plaintiff. Because of this relationship, the absent party was necessary in order to avoid repeated lawsuits on the same subject matter. *Id.* at 708. Here, Sealy Mattress is not a direct party to the contract, and, as shown below, Defendants will not be subject to repeated lawsuits from Sealy or Sealy Mattress.

*B. Rule 19(a)(1)(B)(i): Will Sealy Mattress's Ability to Protect Its Interest be Impaired?*

*4 Rule 19(a)(1)(B)(i) provides that, if proceeding in a party's absence would practically impair that party's ability to protect its interest in the litigation, then the party should be joined. Defendants contend, without much specificity, that Sealy Mattress's rights under the Supply Agreement will be resolved by this proceeding, and that it therefore is a necessary party. However, Defendants do not articulate any clear reason as to why Sealy Mattress's rights will not be adequately protected in its absence. For the following reasons, the Court finds that Sealy Mattress is not a necessary party under Rule 19(a)(1)(B)(i) since its ability to protect its interest in this litigation will not be impaired by its absence.

For a party to be necessary within the meaning of Rule 19(a)(1)(B)(i), the absent party must be the one claiming the interest. *See Peregine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir.1996). A party named in the litigation cannot assert the interest on the absent party's behalf. *Id.* Here, Sealy Mattress does not claim an interest in the litigation. Defendants attempt to assert the interest on Sealy Mattress's behalf This is not sufficient to make Sealy Mattress a necessary party.[FN2]

> FN2. Presumably, Sealy Mattress (as an affiliate of Sealy) is aware of this litigation, and has entrusted Sealy to protect any interest it has in the litigation.

Additionally, the fact that a party may have an interest in the litigation is not sufficient to make that party necessary pursuant to Rule 19. When an identity of interest exists between two parties, and one of the parties will sufficiently represent those interests, the other party is not necessary to the litigation. *See, e.g., Polargrid,* 2006 WL 2266351, at *10 (holding that Plaintiff's subsidiaries and affiliates were not necessary parties because their interests would be well represented by Plaintiff); *Bank of America v. Lemgruber,* 385 F.Supp.2d. 200, 232-33 (S.D.N.Y.2005) (holding that Plaintiff's affiliates were not necessary parties because their interests would be adequately protected by Plaintiff).

Here, the interests of Sealy and Sealy Mattress are the same. Sealy, the party present, contracted with Defendant Foamex specifically to procure coverage for itself and affiliates such as Sealy Mattress. Thus, Sealy's interest in ensuring that Defendants Foamex and AHA uphold their obligations under the Supply

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Agreement is sufficient to ensure that any interest Sealy Mattress has is adequately protected.

Furthermore, necessary parties under Rule 19(a)(1)(B)(i) are "only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation."*Mastercard Int'l Inc. v. Visa Int'l Service Ass'n,* 471 F.3d 377, 387 (2d Cir.2006). In *Mastercard,* FIFA had given Visa exclusive sponsorship rights in violation of Mastercard's right of first refusal concerning those rights. Mastercard sued FIFA for breach of contract and sought to enjoin FIFA from performing the Visa contract. *Id.* at 380-81.Visa claimed it was a necessary party under Rule 19(a)(1)(B)(i) because its interests were clearly implicated in the litigation. *Id.* at 385.The Second Circuit ruled that Visa was not a necessary party because "the harm Visa may suffer is not *caused by* Visa's absence from [the] litigation. Any harm would result from FIFA's alleged conduct in awarding Visa sponsorship rights it could not legally give."*Id.* at 387 (emphasis in original). Similarly, in the instant case, any harm Sealy Mattress may suffer would not be caused by its absence from the litigation, but rather by the insufficiency of arrangements pursuant to the Supply Agreement to cover it in connection with the underlying loss.[FN3]Cf. *Crouse-Hinds Co. v. InterNorth Inc.,* 634 F.2d 690, 701 (2d Cir.1980) (holding that a party to a merger agreement was a necessary party to a counterclaim seeking to enjoin the merger because the party's interest would have been seriously impaired if it were not a party to the action).

> FN3. The Court expresses no opinion as to the merits of this action.

*5 Defendants rely on *Shimkin v. Tomkins, McGuire, Wachenfeld & Barry* for the proposition that, "if the resolution of the plaintiff's claim would require the definition of a non-party's rights under a contract, 'it is likely' that the non-party is necessary under Rule 19(a)." No. 02 Civ. 9731, 2003 WL 21964959, at *4 (S.D.N.Y. Aug. 19, 2003). Specifically, Defendants contend that, since Plaintiffs' claims require the court to determine Sealy Mattress's rights under the Supply Agreement, Sealy Mattress is a necessary party. However, in *Shimkin,* the absent party was a direct party to the contract at issue. In order for the absent party to protect its interests, it was necessary for it to

be a party to the litigation. Again, the instant case is distinguishable because Sealy Mattress's interests only arise out of the fact that it stood to benefit under the contract although it was not a party thereto. Interests of this kind are insufficient to make Sealy Mattress a necessary party. See e.g., *Polargrid* 2006 WL 2266351, at *10;see also*Fed.R.Civ.P. 17(a)(1)(f) (providing that a party in whose name a contract has been made for another's benefit may sue in its own name without joining the person for whose benefit the action is brought).

## C. *Rule 19(a)(1)(B)(ii): Will Any Present Party Be Subject to Multiple or Inconsistent Liability?*

A party is necessary, and must be joined in the lawsuit, if that party's absence would leave an existing party to the lawsuit subject to a substantial risk of incurring double, multiple, or otherwise inconsistent liability obligations. Fed.R.Civ.P. 19(a)(1)(B) (ii). Defendants argue that they face a substantial risk of multiple or inconsistent liability if Sealy Mattress is not joined because, if Sealy Mattress is not joined, it could bring a subsequent suit against Defendants on the same claim, and another court may make an inconsistent declaration as to Sealy Mattress's rights and obligations under the Supply Agreement. The Court finds Defendants' argument unpersuasive.

A party is barred from litigating a cause of action if it is in privity with a party who has already litigated the same cause of action. See *Polargrid v. VSNL,* 2006 WL 2266351, *10. "Privity will be found where a party's interest in litigation is virtually identical to an interest it had in a prior litigation, where it was not actually named but can said to have had 'virtual representation.' " *Id.*

Sealy Mattress is, without a doubt, in privity with Sealy. One of the express purposes of the Supply Agreement was to procure insurance coverage for Sealy affiliates such as Sealy Mattress. Insofar as this case deals with that coverage, Sealy and Sealy Mattress's interests are identical. Sealy is effectively representing Sealy Mattress's interests in the case by seeking to enforce the provisions of the Supply Agreement that ensure coverage for Sealy Mattress. Therefore, res judicata will preclude Sealy Mattress from bringing this breach of contract claim against Defendants in the future.

**\*6** Because this Court finds that Sealy Mattress is not a necessary party pursuant to Rule 19(a)(1), the Court need not decide the issue of whether Sealy Mattress is indispensable under Rule 19(b). Accordingly, Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) is denied.

### CONCLUSION

Defendant's motion to dismiss the Amended Complaint (docket entry no. 25) is denied.

In light of the July 24, 2006, Order of the U.S. Bankruptcy Court for the District of Delaware, granting relief from the automatic stay imposed in connection with Foamex's bankruptcy proceedings (see docket entry no. 16, Attachment 1), this case is restored to the active calendar. The parties shall prepare for, and appear at, a pretrial conference before the undersigned in accordance with the Initial Conference Order issued this same day.

SO ORDERED.

S.D.N.Y.,2008.
Continental Cas. Co. v. American Home Assur. Co.
Slip Copy, 2008 WL 1752231 (S.D.N.Y.)

END OF DOCUMENT

# EXHIBIT B

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
**(Cite as: — F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

**H**City of New York v. Milhelm Attea & Bros., Inc.
E.D.N.Y.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
The CITY OF NEW YORK, Plaintiff,
v.
MILHELM ATTEA & BROS., INC., Day
Wholesale, Inc., Gutlove & Shirvint, Inc., Mauro
Pennisi, Inc., Jacob Kern & Sons, Inc., Windward
Tobacco, Inc., and Capital Candy Company, Inc.,
Defendants.
**No. 06-CV-3620 (CBA).**

April 30, 2008.

**Background:** City brought amended complaint
against a group of cigarette wholesalers, alleging that
they violated the Contraband Cigarette Trafficking
Act (CCTA) by shipping in excess of 10,000
unstamped cigarettes to reservation retailers who re-
sold the cigarettes to the public. Defendants moved to
dismiss.

**Holdings:** The District Court, <u>Amon</u>, J., held that:
(1) abstention was not appropriate;
(2) city did not lack capacity to bring suit against
wholesalers as alleged state agents;
(3) city stated claim for violation of CCTA;
(4) city stated public nuisance claim; and
(5) tribes and state were not necessary parties.

Motions denied.

**[1] Taxation 371 〰3612**

<u>371</u> Taxation
   <u>371IX</u> Sales, Use, Service, and Gross Receipts
Taxes
     <u>371IX(A)</u> In General
      <u>371k3607</u> Power to Impose
       <u>371k3612</u> k. Indians and Persons
Dealing with Indians on Indian Lands. <u>Most Cited
Cases</u>
Cigarettes to be consumed on a Native-American
reservation by enrolled tribal members are tax-
exempt.

**[2] Taxation 371 〰3612**

<u>371</u> Taxation
   <u>371IX</u> Sales, Use, Service, and Gross Receipts
Taxes
     <u>371IX(A)</u> In General
      <u>371k3607</u> Power to Impose
       <u>371k3612</u> k. Indians and Persons
Dealing with Indians on Indian Lands. <u>Most Cited
Cases</u>
On-reservation cigarette sales to persons other than
reservation Indians are legitimately subject to state
taxation.

**[3] Federal Civil Procedure 170A 〰1742(2)**

<u>170A</u> Federal Civil Procedure
   <u>170AXI</u> Dismissal
     <u>170AXI(B)</u> Involuntary Dismissal
      <u>170AXI(B)2</u> Grounds in General
       <u>170Ak1742</u> Want of Jurisdiction
        <u>170Ak1742(2)</u> k. Particular Cases
and Grounds. <u>Most Cited Cases</u>
As standing is a limitation on the authority of a
federal court to exercise jurisdiction, it is properly
addressed within the context of a motion to dismiss
for lack of subject matter jurisdiction. <u>Fed.Rules
Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.</u>

**[4] Federal Civil Procedure 170A 〰103.2**

<u>170A</u> Federal Civil Procedure
   <u>170AII</u> Parties
     <u>170AII(A)</u> In General
      <u>170Ak103.1</u> Standing
       <u>170Ak103.2</u> k. In General; Injury or
Interest. <u>Most Cited Cases</u>

**Federal Civil Procedure 170A 〰103.3**

<u>170A</u> Federal Civil Procedure
   <u>170AII</u> Parties
     <u>170AII(A)</u> In General
      <u>170Ak103.1</u> Standing
       <u>170Ak103.3</u> k. Causation;
Redressability. <u>Most Cited Cases</u>

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Article III standing requires the plaintiff to demonstrate (1) an injury in fact, which is concrete and particularized; (2) a causal connection between the injury and the conduct complained of so that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely the injury will be redressed by a favorable decision. U.S.C.A. Const.Art. 3, § 2, cl. 1.

**[5] Federal Civil Procedure 170A ⊛103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases
Standing must be established before a court decides a case on the merits.

**[6] Taxation 371 ⊛3709**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts Taxes
        371IX(I) Collection and Enforcement
            371k3709 k. Actions for Taxes. Most Cited Cases
City's tax loss, which allegedly occurred due to cigarette wholesalers' failure to pre-collect state taxes sold to Native-American reservation retailers, which drew city purchasers out of the city to those retailers, was injury fairly traceable to wholesalers' alleged actions, sufficient to confer Article III standing on city to maintain claim that wholesalers violated Contraband Cigarette Trafficking Act (CCTA). U.S.C.A. Const. Art. 3, § 2, cl. 1; 18 U.S.C. § 2341 et seq; 18 U.S.C.A. § 2346(b)(1).

**[7] Federal Courts 170B ⊛29.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk29 Objections to Jurisdiction, Determination and Waiver
                170Bk29.1 k. In General. Most Cited Cases

**Federal Courts 170B ⊛65**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk65 k. Procedure as to Abstention; Reserving or Retaining Jurisdiction. Most Cited Cases
A motion to dismiss based on the abstention doctrine is also considered as a motion to dismiss for lack of subject matter jurisdiction. Fed.Rules Civ.Proc.Rule 12(b)(1), 28 U.S.C.A.

**[8] Federal Courts 170B ⊛41**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk41 k. Nature and Grounds in General. Most Cited Cases
Although federal courts have a virtually unflagging obligation to exercise their jurisdiction, there are several traditional circumstances in which courts should abstain.

**[9] Federal Courts 170B ⊛43**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk43 k. Questions of State or Foreign Law Involved. Most Cited Cases
*Burford* abstention doctrine applies: (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

**[10] Federal Courts 170B ⊛59**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                            Page 3
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

170Bk47 Particular Cases and Subjects, Abstention

170Bk59 k. Public Finances; Taxation and Expenditures. Most Cited Cases

Burford abstention was not appropriate in city's action against group of cigarette wholesalers under Contraband Cigarette Trafficking Act (CCTA), which alleged that wholesalers violated CCTA by shipping in excess of 10,000 untaxed cigarettes to Native-American reservation retailers who re-sold the cigarettes to the public; while state law had a regulatory scheme that addressed the taxation of cigarettes, the federal act contemplated federal interaction with that scheme through its incorporation of state law. 18 U.S.C.A. § 2341 et seq.; McKinney's Tax Law § 471.

**[11] Federal Courts 170B ☞43**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk43 k. Questions of State or Foreign Law Involved. Most Cited Cases

Although Burford abstention doctrine is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy.

**[12] Federal Courts 170B ☞65**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk65 k. Procedure as to Abstention; Reserving or Retaining Jurisdiction. Most Cited Cases

Colorado River abstention permits stay or dismissal of a federal suit when there is a concurrent state proceeding parallel to the federal proceeding.

**[13] Federal Courts 170B ☞41**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction;

Abstention Doctrine
    170Bk41 k. Nature and Grounds in General. Most Cited Cases

In determining whether Colorado River abstention is applicable, a court should consider:(1) whether the controversy involves property over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

**[14] Federal Courts 170B ☞54**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk47 Particular Cases and Subjects, Abstention
                170Bk54 k. Injunctions in General. Most Cited Cases

Pending proceeding in state court which preliminary enjoined the enforcement of New York statute governing the taxation of cigarettes on Native-American reservations, did not warrant Colorado River abstention in city's action against group of cigarette wholesalers under Contraband Cigarette Trafficking Act (CCTA), which alleged that wholesalers violated CCTA by shipping in excess of 10,000 untaxed cigarettes to Native-American reservation retailers who re-sold the cigarettes to the public, as there was not sufficient parallelism between the issues in the state lawsuit and the city's case; city sought to compel wholesalers' compliance with the cigarette tax through the CCTA, and the applicability of the reservations provision was not at issue as it was in state case. 18 U.S.C.A. § 2341 et seq.

**[15] Federal Courts 170B ☞41**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk41 k. Nature and Grounds in

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

Page 4

General. <u>Most Cited Cases</u>
Some commonality in subject matter alone is insufficient to support abstention under the *Colorado River* doctrine.

**[16] Federal Courts 170B ☞433**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
           170Bk433 k. Other Particular Matters.
<u>Most Cited Cases</u>
Capacity to sue is a state law issue.

**[17] Constitutional Law 92 ☞688**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
           92VI(A)2 Particular Classes of Persons
               92k688 k. Governmental Entities. <u>Most Cited Cases</u>
As a general rule, municipalities in New York lack capacity to mount constitutional challenges to acts of the state and state legislation.

**[18] Constitutional Law 92 ☞688**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(A) Persons Entitled to Raise Constitutional Questions; Standing
           92VI(A)2 Particular Classes of Persons
               92k688 k. Governmental Entities. <u>Most Cited Cases</u>
Limitation on the capacity of municipalities, under New York law, to mount constitutional challenges to acts of the state and state legislation flows from judicial recognition of the judicial as well as political relationship between those entities and the state.

**[19] Taxation 371 ☞3709**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts Taxes
        371IX(I) Collection and Enforcement
           371k3709 k. Actions for Taxes. <u>Most Cited Cases</u>

City did not lack capacity, under New York law, to bring suit against cigarette wholesalers under Contraband Cigarette Trafficking Act (CCTA), alleging that wholesalers violated CCTA by shipping in excess of 10,000 untaxed cigarettes to Native-American reservation retailers who re-sold the cigarettes to the public, even though wholesalers were licensed by the state to act as tax stamping agents for the state. <u>18 U.S.C.A. § 2341 et seq.</u>

**[20] Taxation 371 ☞3612**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts Taxes
        371IX(A) In General
           371k3607 Power to Impose
               371k3612 k. Indians and Persons Dealing with Indians on Indian Lands. <u>Most Cited Cases</u>

**Taxation 371 ☞3708**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts Taxes
        371IX(I) Collection and Enforcement
           371k3706 Collection by Sellers or Others
               371k3708 k. Rights and Liabilities as to Taxes Uncollected. <u>Most Cited Cases</u>
New York cigarette tax, which group of cigarette wholesalers allegedly failed to collect on a shipment of unstamped cigarettes to Native-American reservation retailers who re-sold the cigarettes to the public, constituted an "applicable" tax, as required to establish liability against wholesalers under Contraband Cigarette Trafficking Act (CCTA), notwithstanding forbearance policy, articulated by the New York State Department of Taxation and Finance within an enforcement decision and advisory opinion, which stated that collection of state cigarette taxes on sale of cigarettes by wholesalers to reservation retailers was not required; Department's policy did not serve to obviate state legislation. <u>18 U.S.C.A. § 2342; McKinney's Tax Law § 471(1-2).</u>

**[21] Taxation 371 ☞3612**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                              Page 5
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

Taxes
    371IX(A) In General
        371k3607 Power to Impose
            371k3612 k. Indians and Persons
Dealing with Indians on Indian Lands. Most Cited
Cases

**Taxation 371 ☞3709**

371 Taxation
    371IX Sales, Use, Service, and Gross Receipts
Taxes
        371IX(I) Collection and Enforcement
            371k3709 k. Actions for Taxes. Most Cited
Cases
City's allegation that cigarette wholesalers sold
cigarettes to Native-American reservation retailers
for re-sale to the public at prices that did not include
the cost of tax stamps required by New York
cigarette tax laws was sufficient to state a claim for
violation of New York's Cigarette Marketing
Standards Act for the selling of cigarettes to retailers
at prices that did not include the costs of tax stamps.
McKinney's Tax Law §§ 471, 483.

**[22] Nuisance 279 ☞59**

279 Nuisance
    279II Public Nuisances
        279II(A) Nature of Injury, and Liability
Therefor
            279k59 k. Nature and Elements of Public
Nuisance in General. Most Cited Cases
In New York, "public nuisance" is conduct or
omissions which offend, interfere with or cause
damage to the public in the exercise of rights
common to all, in a matter such as to offend public
morals, interfere with use by the public of a public
place or endanger or injure the property, health,
safety or comfort of a considerable number of
persons.

**[23] Nuisance 279 ☞62**

279 Nuisance
    279II Public Nuisances
        279II(A) Nature of Injury, and Liability
Therefor
            279k62 k. Public Annoyance, Injury, or
Danger. Most Cited Cases

Under New York public nuisance law, to be reckoned
as "considerable," the number of persons affected
need not be shown to be very great; it is enough that
so many are touched by the offense and in ways so
indiscriminate and general that the multiplied
annoyance may not unreasonably be classified as a
wrong to the community.

**[24] Nuisance 279 ☞75**

279 Nuisance
    279II Public Nuisances
        279II(B) Rights and Remedies of Private
Persons
            279k75 k. Actions for Abatement or
Injunction. Most Cited Cases

**Nuisance 279 ☞76**

279 Nuisance
    279II Public Nuisances
        279II(B) Rights and Remedies of Private
Persons
            279k76 k. Actions for Damages. Most
Cited Cases

**Nuisance 279 ☞84**

279 Nuisance
    279II Public Nuisances
        279II(C) Abatement and Injunction
            279k84 k. Actions. Most Cited Cases
Whether conduct constitutes a public nuisance under
New York law must be determined as a question of
fact under all the circumstances.

**[25] Nuisance 279 ☞62**

279 Nuisance
    279II Public Nuisances
        279II(A) Nature of Injury, and Liability
Therefor
            279k62 k. Public Annoyance, Injury, or
Danger. Most Cited Cases
City's allegations against cigarette wholesalers that
had shipped in excess of 10,000 unstamped cigarettes
to Native-American reservation retailers, drawing
city purchasers out of the city to those retailers, were
sufficient to state a public nuisance claim under New
York law; city alleged that the health of its residents

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

might be endangered by the re-sale of cigarettes, at lower prices, over the Internet, mail, or by telephone, and city also alleged that a considerable number of people were endangered by such remote sales, stating that perhaps as much as 15 percent of all smokers purchase their cigarettes from Internet sellers, street sellers, and reservation sellers. McKinney's Public Health Law §§ 1399-ll, 1399-cc.

**[26] Nuisance 279** 🔑 **69**

279 Nuisance
   279II Public Nuisances
      279II(A) Nature of Injury, and Liability Therefor
         279k69 k. Persons Creating or Causing Nuisance. Most Cited Cases
"Factual causation," in a public nuisance claim, requires proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right.

**[27] Nuisance 279** 🔑 **69**

279 Nuisance
   279II Public Nuisances
      279II(A) Nature of Injury, and Liability Therefor
         279k69 k. Persons Creating or Causing Nuisance. Most Cited Cases
Proximate causation, in a public nuisance claim, demands a reasonable connection between defendants' alleged actions and the harm that followed.

**[28] Nuisance 279** 🔑 **69**

279 Nuisance
   279II Public Nuisances
      279II(A) Nature of Injury, and Liability Therefor
         279k69 k. Persons Creating or Causing Nuisance. Most Cited Cases
When more than one party is alleged to have participated or created a public nuisance, joint and several liability for the resultant injury may be appropriate.

**[29] Federal Civil Procedure 170A** 🔑 **1747**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)2 Grounds in General
            170Ak1744 Parties, Defects as to
               170Ak1747 k. Nonjoinder in General. Most Cited Cases
Before dismissing a complaint for failure to join a party, a district court must determine whether a missing party is necessary.

**[30] Federal Civil Procedure 170A** 🔑 **1747**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)2 Grounds in General
            170Ak1744 Parties, Defects as to
               170Ak1747 k. Nonjoinder in General. Most Cited Cases
Party moving for dismissal for failure to join an indispensable party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence. Fed.Rules Civ.Proc.Rule 19(b), 28 U.S.C.A.

**[31] Federal Civil Procedure 170A** 🔑 **211**

170A Federal Civil Procedure
   170AII Parties
      170AII(E) Necessary Joinder
         170AII(E)2 Particular, Necessary or Indispensable Parties
            170Ak211 k. In General. Most Cited Cases
Native-American tribes in New York state were not necessary parties to city's suit, under Contraband Cigarette Trafficking Act (CCTA), which alleged that cigarette wholesalers had violated Act by shipping in excess of 10,000 unstamped cigarettes to Native-American retailers who re-sold the cigarettes to the public; absence of the tribes would not deny complete relief to any of the parties, as city could secure its requested relief by wholesalers affixing tax stamps to the cigarettes sold to reservations, and no tribe had claimed an interest relating to the subject of the action. 18 U.S.C.A. § 2341 et seq.; Fed.Rules Civ.Proc.Rules 12(b)(7), 19(a)(1)(A), 19(a)(2), 28 U.S.C.A.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)

(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

**[32] Federal Civil Procedure 170A** 🗝219

170A Federal Civil Procedure
　　170AII Parties
　　　　170AII(E) Necessary Joinder
　　　　　　170AII(E)2 Particular, Necessary or Indispensable Parties
　　　　　　　　170Ak219 k. Governmental Bodies and Officers Thereof. Most Cited Cases
New York state was not necessary party to city's suit, under Contraband Cigarette Trafficking Act (CCTA), which alleged that cigarette wholesalers had violated Act by shipping in excess of 10,000 unstamped cigarettes to Native-American retailers who re-sold the cigarettes to the public; absence would not deny complete relief to the parties, as city would secure the relief it sought by wholesalers' stamping of cigarettes sold to reservations, and state had not claimed any interest in the lawsuit, even though the lawsuit implicated the collection of tax revenue by the state. 18 U.S.C.A. § 2341 et seq.; Fed.Rules Civ.Proc.Rules 12(b)(7), 19(a)(1)(A), 19(a)(2), 28 U.S.C.A.

West Codenotes
Validity Called into Doubt N.Y. Tax Law § 471-e
Eric Proshansky, Corporation Counsel of the City of NY, Brad Michael Snyder, New York City Law Department, New York, NY, for Plaintiff.
Gerald T. Walsh, Zdarsky, Sawicki & Agostinelli, Margaret A. Murphy, Law Offices of Margaret A. Murphy, Buffalo, NY, Michael S. Feldberg, Nathan Daniel Reilly, Allen & Overy LLP, Daniel Steinberg, Hodgson Russ LLP, James Simermeyer, New York, NY, Paul Francis Keneally, Underberg & Kessler LLP, Rochester, NY, for Defendants.

**MEMORANDUM & ORDER**

AMON, District Judge.

*INTRODUCTION*

**\*1** The City of New York has brought an Amended Complaint against the above-captioned defendants, a group of cigarette wholesalers who are state-licensed cigarette stamping agents. The principal contention of the City is that the wholesalers violate the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., by shipping in excess of 10,000 unstamped cigarettes to reservation retailers who re-sell the cigarettes to the public. According to

the City, New York Tax Law § 471 requires that cigarettes sold to Native Americans for re-sale to the public must be taxed, and that the defendant agents are responsible for collecting the tax by purchasing tax stamps from the New York State Tax Commission and affixing them to cigarette packages. The City brings additional state law claims under New York Tax Law § 484, the Cigarette Marketing Standards Act, as well as a public nuisance claim. Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7). For the reasons set forth below, defendants' motions to dismiss are denied.

**I. Background**

The following facts are undisputed.

**A. New York State's Cigarette Tax Scheme**

Article 20 of the New York Tax Law imposes a tax on all cigarettes possessed for sale or use in New York State, except for those cigarettes that New York is "without power" to tax. See N.Y. Tax L. § 471 ("There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax ...."); Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994) (citing N.Y. Tax L. § 471(1)). New York's cigarette tax has two components: the cigarette tax imposed on possession for sale in the State pursuant to N.Y. Tax Law § 471; and the cigarette use tax imposed pursuant to N.Y. Tax Law § 471-a. See N.Y. Tax L. §§ 471, 471-a. Under § 471, cigarettes are presumed taxable. N.Y. Tax L. § 471 (stating that "all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof."). New York City also imposes a cigarette tax pursuant to authority delegated by the state and its own regulations. See N.Y.C. Admin. Code § 11-1302(a)(1).

The New York State tax on cigarettes is presently $1.50 per pack; the City tax is $1.50 per pack. State and local sales tax is $0.33 per pack. The total tax on a pack of cigarettes sold in New York City, therefore,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

is $3.33 per pack, or $33.30 per carton.

Under New York law, taxes on cigarettes are largely collected through a system of prepayments, and then passed along the distribution chain to the consumer. See N.Y. Tax Law § 471(2); *In re New York Assoc. of Convenience Stores v. Urbach*, 92 N.Y.2d 204, 209, 677 N.Y.S.2d 280, 699 N.E.2d 904 (N.Y.1988). Wholesalers, such as the defendants in this action, may be licensed by New York as "stamping agents" pursuant to New York Tax Law § 472. N.Y. Tax L. § 472(2) ("The commissioner may license dealers in cigarettes ... as agents to buy or affix stamps to be used in paying the tax herein imposed...."). A stamping agent pre-pays cigarette taxes and affixes a tax stamp to each package of cigarettes; when the tax is paid, any dealer subsequently receiving the stamped cigarettes is not required to purchase and affix tax stamps. *See id.* § 471(1). State-licensed stamping agents are permitted to sell tax-stamped cigarettes and other tobacco products to registered New York retailers and licensed wholesalers. *See id.* §§ 472(1), 480(1)(a).

*2 [1][2] Federal and state governments lack authority to tax cigarettes sold to members of Native American tribes for their own consumption. Thus, cigarettes to be consumed on the reservation by enrolled tribal members are tax-exempt. *Milhelm Attea & Bros., Inc.*, 512 U.S. at 64 (citing *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 475-481, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976)). However, "on-reservation cigarette sales to persons other than reservation Indians ... are legitimately subject to state taxation."*Id.* (citing *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 160-161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980)).

**B. Forbearance Policy**

Whether and how to collect taxes on cigarettes sold on reservations to persons other than Native American tribe members has been the subject of ongoing debate in New York. As described above, New York wholesalers generally collect cigarette sales tax by selling cigarettes affixed with tax stamps to retailers, and remitting the tax payments to the State. However, the New York State Department of Taxation and Finance (the "Department") has allowed wholesalers to sell unstamped cigarettes to Native American tribes, without requiring an accounting to reflect that the unstamped cigarettes are being sold only to tribe members. *See* State of New York Commissioner of Taxation and Finance, Advisory Opinion Petition No. M06316A, March 16, 2006 (hereinafter "Advisory Opinion").

In 1988, the Department adopted regulations requiring reservation retailers to pay sales and excise taxes on cigarettes. The regulations allowed retailers to purchase a limited quantity of untaxed cigarettes based on estimates of demand by tribe members. *See In re New York Assoc. of Convenience Stores v. Urbach*, 275 A.D.2d 520, 712 N.Y.S.2d 220, 221 (N.Y.2000). Any cigarettes sold above the allotment were subject to applicable state taxes. *Id.* The regulations were challenged by reservation retailers and suspended by the Department pending outcome of the related litigation. *Id.* The Supreme Court ultimately upheld the Department's regulations, concluding that the state could lawfully tax sales by reservation retailers to non-tribe members. *See Milhelm Attea & Bros., Inc.*, 512 U.S. at 61. The Department, however, did not reinstate its regulations after the Supreme Court's decision in *Milhelm*.

In 1997, Governor George Pataki directed the repeal of the Department's 1988 regulations, and proposed new legislation that would allow reservation retailers to sell tax-free cigarettes. The 1988 regulations were repealed on April 28, 1998. *In re New York Assoc. of Convenience Stores v. Urbach*, 92 N.Y.2d at 213-14, 677 N.Y.S.2d 280, 699 N.E.2d 904. Governor Pataki's proposed legislation was never passed.

In 2005, New York passed a tax law that would require wholesalers to sell only stamped cigarettes to Native American tribes. *See* N.Y. Tax Law § 471-e. Under the new scheme, tribe members would be granted reimbursement coupons on a quarterly basis. *Id.* These coupons would allow the possessor to purchase stamped cigarettes without paying taxes. However, the regulations required by § 471-e were never adopted, and a New York Supreme Court decision has preliminarily enjoined the section's enforcement. *See Day Wholesale v. State of New York*, No. 06-7688, slip op. at 5 (N.Y.Sup.Ct. Jan. 2, 2007) (holding that § 471-e "is not in effect because on March 1, 2006 and subsequent thereto there has not been actions taken or rules and regulations issued that would be necessary to implement the provisions

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

of this act").

**\*3** On March 16, 2006, The Department issued an Advisory Opinion in response to a request by Milhelm Attea & Brothers. The Advisory Opinion noted that the Department "has a longstanding policy of allowing untaxed cigarettes to be sold from licensed stamping agents to recognized Indian Nations and reservation-based retailers making sales from qualified Indian reservations."Advisory Opinion at 3. The Department indicated that it has "no intention to alter" its policy of forbearance, but "if the Department decides to revise its policy in the future, it will provide adequate notice to all affected stamping agents."*Id.* at 4. Wholesalers continue to sell unstamped cigarettes to reservation retailers.

*DISCUSSION*

**I. The City's Claims and the Defendants' Arguments**

In view of the above-described federal and state statutory schemes, the City contends that defendant wholesalers violate the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*, by shipping unstamped cigarettes to reservation retailers, who re-sell the cigarettes to the public. According to the City, N.Y. Tax Law § 471(1)-(2) provides that cigarettes sold to Native Americans for re-sale to the public must be taxed, and that the defendant agents are required to purchase tax stamps and affix them to cigarette packages. The City contends that these cigarettes are "contraband" within the meaning of the CCTA because the State "requires" that stamps be placed on packages of cigarettes by the wholesaler defendants, and the cigarettes at issue bear no evidence of the payment of state cigarette taxes. 18 U.S.C. § 2341(2).

As a result of defendants' alleged failure to pre-pay taxes and affix stamps, reservation retailers supplied by defendants are able to sell cigarettes at prices "well below" those of retailers selling stamped cigarettes. (Am.Compl.¶ 3.) According to the City, the lower price of unstamped cigarettes, supplied by defendants, induces "large numbers of City residents" to purchase them in retail stores outside of the City as well as "on the street, over the Internet, or by mail, fax, and telephone."(*Id.* ¶ 4.) The City alleges that sales of unstamped cigarettes replace sales that would

otherwise generate tax revenue for the State and City, costing the City "millions of dollars." (*Id.* ¶ 5.)

The City brings additional state law causes of action: (1) a claim under N.Y. Tax Law § 484, the Cigarette Marketing Standards Act ("CMSA"), and (2) a public nuisance claim. As part of the relief requested, the City seeks to enjoin the defendants' sale of unstamped cigarettes and to recover lost tax revenue.

Defendants have moved to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(1). They contend that the City lacks standing to maintain its CCTA claim and that the Court must abstain from consideration of the issues raised in this case. Defendants also summarily contend that until the State's "forbearance policy changes," there is "no case or controversy to adjudicate in federal court."

**\*4** Defendants further argue, pursuant to Fed.R.Civ.P. 12(b)(6), that the City fails to state a claim under the CCTA because, even if the provisions of N.Y. Tax Law § 471 govern sales of cigarettes to reservation retailers, the State does not "require" that stamps be placed upon cigarettes sold to them for re-sale to the public in view of New York's "forbearance policy" on Native American cigarette taxation. This forbearance policy, defendants contend, also precludes the City's state law claim under New York's CMSA. Defendants also move to dismiss the City's public nuisance claim. Additionally, defendants argue that the City lacks the legal capacity to sue defendants, licensed stamping agents, acting on behalf of the State.

Finally, defendants contend, pursuant to Fed.R.Civ.P. 12(b) (7), that the City's claims must be dismissed because Native American tribes located in New York, as well as New York State, are necessary and indispensable parties to this suit.

The Court considers each of the defendants' arguments below.

**II. Jurisdictional Issues**

**A. Standard of Review**

Fed.R.Civ.P. 12(b)(1) provides for dismissal when a federal court lacks jurisdiction over the subject matter

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: — F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

of a claim. When a defendant moves to dismiss a cause of action pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Raila v. United States*, 355 F.3d 118, 119 (2d Cir.2004). Where a defendant raises a bona fide challenge to subject matter jurisdiction, a plaintiff has the burden of proving that jurisdiction is proper by a preponderance of the evidence. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir.2002); *see also London v. Polishook*, 189 F.3d 196-99 (2d Cir.1999) ( "[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction ... to proffer the necessary factual predicate-not simply an allegation in a complaint-to support jurisdiction.") (citation omitted). Generally, a court considers jurisdictional issues before any other motions to dismiss "since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."*U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir.1993).

**B. Standing**

[3][4][5] As standing is "a limitation on the authority of a federal court to exercise jurisdiction," it is properly addressed within the context of a Rule 12(b)(1) motion. *Alliance For Envt'l Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n. 6 (2d Cir.2006). The burden of demonstrating standing falls to the party invoking federal jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendants contend that the City lacks standing because it has failed to allege an injury in fact that is fairly traceable to the defendants' conduct, and because any injury the City has sustained will not be redressed by the requested relief. Article III standing requires the plaintiff to demonstrate: (1) an injury in fact, which is concrete and particularized; (2) a causal connection between the injury and the conduct complained of so that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely the injury will be redressed by a favorable decision.*Lujan*, 504 U.S. at 560-61. Standing must be established before a court decides a case on the merits. *Alliance for Envt'l Renewal*, 436 F.3d at 85.

*5 As described above, the City alleges that it has suffered "an enormous tax loss" due to defendants' sale of unstamped cigarettes to reservation sellers. (Am.Compl.¶ 44.) According to the City, the lower price of unstamped cigarettes, supplied by defendants, induces "large numbers of City residents" to purchase them in retail stores outside of the City as well as "on the street, over the Internet, or by mail, fax, and telephone."(*Id.* at ¶ 4.) The complaint states that "[t]he vast majority of sales of unstamped cigarettes replace sales that would otherwise generate tax revenue for the City and, in significant part, for the City. Sales of unstamped cigarettes annually cost New York City millions of dollars in tax revenues."(*Id.* ¶ 5.)

Defendants contend that the City's injury of lost tax revenue cannot be traced to their conduct. First, defendants correctly note that they are not required to pre-collect City taxes on cigarettes sold to reservation retailers. New York State tax legislation authorizes the precollection of State cigarette taxes by licensed stamping agents. *See* N.Y. Tax L. § 471. The State also authorizes the pre-collection of City cigarette taxes on cigarettes sold at retail or used in New York City. *See* N.Y. Unconsol. Law § 9436. Pursuant to this state legislation, the New York City Administrative Code requires stamping agents to affix City tax stamps on cigarettes prior to delivery of those cigarettes to any dealer in New York City. N.Y.C. Admin. Code § 11-1305(a). Defendants' sales to reservation retailers, located outside of New York City, fall outside the scope of the pre-collection scheme for City taxes. Defendants additionally argue that even if they pre-collected the state tax of 15 dollars per carton, cigarettes sold by reservation retailers would still be 15 dollars cheaper outside of New York City because of the non-applicability of the City tax. Thus, defendants argue that the lost sales of which the City complains would continue to occur.[FN1]

[6] The Court finds that the City has carried its burden to show Article III standing by demonstrating an injury fairly traceable to the defendants' alleged actions. The City does not claim that defendants are required to affix City tax stamps to cigarettes sold to reservation retailers outside of New York City. Rather, the City asserts that its injury stems from defendants' failure to pre-collect *state* taxes, because cigarettes sold without state tax stamps are less expensive (by 15 dollars per carton) than those sold

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

with stamps. The submissions by the City support a finding of an injury that may be fairly traced to the defendants' conduct. The complaint alleges that, by supplying retailers with these discounted cigarettes, City purchasers are drawn out of the city to those retailers. (Am.Compl.¶ 4.) The complaint further states that tax-free sales supplied by defendants replace taxed sales that would have taken place in New York City, thereby depriving the City of valuable tax revenue.(*Id.* ¶ 5.)

*6 From the facts alleged, it appears the City could demonstrate that the price differential created by defendants' sale of untaxed cigarettes to reservation retailers impacts the market in a way that deprives the City of substantial tax revenue. The City's injury may be redressed by requiring the defendants to stamp cigarettes sold to reservation retailers for re-sale to the public, bridging by half the price differential between cigarettes sold in the City and those by reservations retailers. In view of the sufficiency of the City's allegations, it is not necessary on this motion to resolve the accuracy of allegations on the economics of cigarette purchasing, or the parties' contention that a remittance policy including reservations retailers may be difficult to implement.

Additionally, the Court notes that the CCTA explicitly provides municipalities with standing to challenge violations of the statute. Section 2346(b)(1) of Title 18 states:

A State, through its attorney general, a local government, through its chief law enforcement officer (or a designee thereof), or any person who holds a permit under chapter 52 of the Internal Revenue Code of 1986, may bring an action in the United States district courts to prevent and restrain violations of this chapter by any person ....

The Court, therefore, concludes that the City has alleged sufficiently the required elements for standing.

## C. Abstention

[7] A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1).*See Republic of Colombia v. Diageo North Am. Inc.,* 531 F.Supp.2d 365, 381 (E.D.N.Y.2007) (citing 5B Wright & Miller § 1350

("Courts have recognized a variety of other defenses that one normally would not think of as raising subject matter jurisdiction questions when considering a Rule 12(b)(1) motion, including claims that ... the subject matter is one over which the federal court should abstain from exercising jurisdiction")).

[8] Although federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, *Colorado River,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), there are several traditional circumstances in which courts should abstain. *See Younger v. Harris,* 401 U.S. 37, 43-54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention appropriate where there is a pending state criminal proceeding); *Burford v. Sun Oil Co.,* 319 U.S. 315, 317-34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention appropriate to avoid interference with attempts to establish coherent state policy and issues of peculiarly local concern); *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 498-501, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention appropriate to avoid unnecessary resolution of a constitutional issue that might be mooted by state court construction of a state law); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. at 817-818 (abstention appropriate where there is concurrent state court litigation whose resolution could result in comprehensive disposition of the litigation). Defendants argue that this Court should abstain from exercising its jurisdiction because the principles set forth in the *Burford* and *Colorado River* decisions are applicable to issues of whether and how to collect taxes on cigarettes sold by Native American retailers to non-Native Americans.

## 1. *Burford* Abstention

*7[9] The *Burford* doctrine applies: (1) where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."*Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236 (citing *Burford v. Sun Oil Co.,* 319 U.S. at 315;*Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). The Second Circuit has identified three

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: — F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

factors pertinent to the determination of whether federal review of a case would be disruptive of state efforts to establish a coherent policy: (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern. *See Bethpage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir.1992). The Second Circuit cautions, however, that "[e]very abstention case is to be decided upon its particular facts and not with recourse to some mechanical checklist."*Id.* at 1245.

*Burford* abstention is appropriate, defendants contend, because the regulation and taxation of cigarettes sold on Native American reservations to non-Native Americans is a complicated problem that the State has attempted to address through legislation and regulation. According to the defendants, this Court's involvement would create conflict and impair the ability of New York State to formulate and execute its domestic policy.

[10] The Court recognizes that the taxation question at issue in this case has been the subject of state legislation, regulation, and litigation. However, abstention is an "extraordinary and narrow exception" to the generally broad duty of federal courts to exercise jurisdiction. *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236 (citation omitted).*Burford* abstention is not appropriate in the instant case, in which the City has brought a claim under a federal statute that seeks to protect federal interests by reference to applicable state tax law. *See, e.g., Gray Poplars Inc., v. 1,371,100 Assorted Brands of Cigarettes*, 282 F.3d 1175, 1177 (9th Cir.2002) ("The fact that the CCTA refers to state law of taxation does not make it any less a federal statute."). The CCTA was enacted explicitly to address what Congress regarded as a federal concern for the problem of trafficking in untaxed cigarettes, because the states had theretofore been unable to address that problem themselves. *See*S.Rep. No. 95-962 (2d Sess.1978), reprinted in 1978 U.S.C.C.A.N. 5518, 5526-30 ("We continue to believe that many of the states most affected have not made serious commitments to the enforcement effort in this area.... We continue to believe strongly that primary efforts to stop cigarette smuggling must be made by the states affected. However, we recognize that federal legislation in aid of state enforcement effort may be

desirable, if not essential, in light of the interstate nature of the problem."). Although New York has a regulatory scheme that addresses the taxation of cigarettes, the CCTA contemplates federal interaction with that scheme through its incorporation of state law.

*8[11] The Court also notes that the state regulatory scheme at issue in this case does not display the same kind of complexity and specificity at issue in *Burford* and other cases in which this Circuit has found abstention to be appropriate. *See Levy v. Lewis*, 635 F.2d 960, 963 (2d Cir.1980) (holding that *Burford* abstention was appropriate in part because "New York State has a complex administrative and judicial system for regulating and liquidating domestic insurance companies"); *Bethpage Lutheran Servs., Inc.*, 965 F.2d at 1243 (finding *Burford* abstention appropriate in view of the "breadth and specificity of the state Medicaid regulations" which included "eighteen regulatory sections governing, substantively and procedurally, the determination of rates and the inclusion of particular costs"). Although *Burford* is concerned with protecting complex state administrative processes from undue federal interference, "it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."*New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citing *Colorado River*, 424 U.S., at 815-816)).*Burford* abstention, therefore, is not appropriate in this case.

**2. Colorado River Abstention**

[12][13]*Colorado River* abstention permits stay or dismissal of a federal suit when there is a concurrent state proceeding parallel to the federal proceeding. *Colorado River*, 424 U.S. at 817-818. In determining whether *Colorado River* abstention is applicable, a court should consider: (1) whether the controversy involves property over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other, *see id.; see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 22, 103

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

Page 13

S.Ct. 927, 74 L.Ed.2d 765 (1983); (5) whether federal law provides the rule of decision, *see id.* at 23, 25-26; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights, *see id.* at 26-27;*see also Woodford v. Community Action Agency of Greene County, Inc.,* 239 F.3d 517, 522 (2d Cir.2001).

According to the defendants, *Colorado River* abstention is appropriate because of a pending proceeding in Superior Court of Erie County, *Day Wholesale Inc. v. New York,* Index No.2006/7668 (Sup.Ct., Erie Co. Jan. 2, 2007). As discussed above, that case preliminarily enjoined the enforcement of N.Y. Tax Law § 471-e, a section that explicitly provides for the collection of taxes on cigarettes sold by reservation retailers to non-Native Americans. *See supra,* at 6.

[14][15]*Colorado River* abstention is not applicable because there is not sufficient parallelism between the issues in the *Day Wholesale* lawsuit and the instant case. In this action, the City seeks to compel defendants' compliance with N.Y. Tax Law § 471 through the CCTA; the applicability of § 471-e is not at issue. In contrast, the question of whether and how § 471-e is in effect is central to *Day Wholesale.*Although both lawsuits relate to taxation of reservation retailers who re-sell to the general public, some commonality in subject matter alone is insufficient to support abstention under the *Colorado River* doctrine. *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 603 (1998) ("While there may be some overlap in subject matter, it is not sufficient to make these actions concurrent."). Accordingly, the Court finds that *Colorado River* abstention is not appropriate.[FN2]

**III. Failure to State a Claim**

**A. Standard of Review**

*9 Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted."A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2); *see also Erickson v. Pardus,* --- U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)."Specific facts are not necessary; the statement need only 'give the

defendant fair notice of what the ... claim is and the grounds upon which it rests.'"*Erickson v. Pardus,* 127 S.Ct. at 2200 (citing *Bell Atl. Corp. v. Twombly,* --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007)). The Second Circuit has observed that the standard articulated by the Supreme Court in *Twombly* remains somewhat uncertain but notes, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'"*Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (*Twombly,* 127 S.Ct. at 1965; quoting *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007)).

When determining the sufficiency of a pleading for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in plaintiffs' [ ] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citations omitted). The Court will draw all reasonable inferences in the plaintiff's favor.*Chambers v. Time Warner Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

**B. Capacity**

Defendants challenge the City's capacity to bring this suit because they contend that neither the CCTA nor the CMSA authorizes suit against a state-licensed stamping agent. They claim that the State's cigarette tax collection scheme, including its forbearance policy, is executed by stamping agents. By bringing claims against these state-licensed actors, defendants argue that the City seeks to impermissibly challenge State action.

[16][17][18] Capacity to sue is a state law issue. Fed.R.Civ.P. 17(b); *Yonkers Comm'n on Human Rights v. City of Yonkers,* 654 F.Supp. 544, 551 (S.D.N.Y.1987). As a general rule, municipalities in New York "lack capacity to mount constitutional challenges to acts of the State and State legislation."*City of New York v. State of New York,* 86 N.Y.2d 286, 289, 631 N.Y.S.2d 553, 655 N.E.2d 649 (N.Y.1995); *see also In re Cty. of Oswego v.*

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

*Travis, 16 A.D.3d 733, 735, 791 N.Y.S.2d 189 (N.Y.App.Div.2005)* ("[M]unicipal corporate bodies, as subdivisions of the state, cannot contest the actions of the state which affect them in their governmental capacity or as representatives of their inhabitants."). This limitation flows from "judicial recognition of the juridical as well as political relationship between those entities and the State." *City of New York v. State of New York,* 86 N.Y.2d at 289, 631 N.Y.S.2d 553, 655 N.E.2d 649.

**\*10**[19] Defendants' capacity argument is not persuasive. As an initial matter, the City has not filed suit against the State, nor is it seeking to invalidate state legislation. Defendants cite no authority to support the proposition that state licensees assume attributes of the state for the purposes of the capacity doctrine. To the contrary, New York case law suggests that sovereignty does not easily transfer from the State. *See, e.g., John Grace & Co., Inc. v. State Univ. Const. Fund,* 44 N.Y.2d 84, 88, 404 N.Y.S.2d 316, 316, 375 N.E.2d 377 (N.Y.1978) ("The mere fact that the Fund is an instrumentality of the State, and as such, engages in operations which are fundamentally governmental in nature does not inflexibly mandate a conclusion that it is the State or one of its agencies."); *In re Plumbing, Heating, Piping, & A.C. Contrs. Ass'n v. New York State Thruway Auth.,* 5 N.Y.2d 420, 424 185 N.Y.S.2d 534, 537 (N.Y.1959) ("[A] public authority enjoys an existence separate and apart from the State, even though it exercises a governmental function"). Although state-licensed stamping agents execute a function endorsed by the State, this role does not necessarily immunize them from suit by a municipality.

Defendants' reliance on *Cty. of Seneca v. Eristoff,* No. 3172-06 (N.Y.Sup.Ct.2006) is misplaced. In that case, a county filed suit against the State Tax Commissioner, as well as four of the seven defendants named in the instant case, to compel the enforcement of N.Y. Tax Law § 471-e. The court dismissed the action against the Commissioner on capacity grounds; however, the decision was limited to a finding that the county lacked capacity to sue the New York State Tax Commissioner. *Id.* ("Respondents seek to dismiss the proceeding on the threshold issue that petitioner Seneca County does not have the capacity to bring an action against the New York State Tax Commissioner Eristoff to

compel enforcement of general taxes.") The *Seneca* court did not hold that the county was barred from filing suit against defendant wholesalers, as state-licensed stamping agents.

The Court concludes, therefore, that the City has the capacity to maintain its suit against the defendant wholesalers.

**C. CCTA Claims**

The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes" 18 U.S.C. § 2342(a). Contraband cigarettes are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." *Id.* § 2341(2). A violation of a state or local cigarette tax law, therefore, is a predicate to a CCTA violation; the state or local government must "require" a stamp to be placed on cigarette packages as evidence of payment of an applicable tax. Native Americans are not among the specifically-exempted categories of people, set forth in the CCTA, that may possess unstamped cigarettes. *Id.* § 2341(2). However, amendments to the statute enacted in 2006 provide that no civil action may be commenced by a state or local government against an Indian tribe or an Indian in Indian country for violations of the CCTA. *Id.* § 2346(b).

**1. Requirements of New York Tax Law § 471**

**\*11** Defendants claim that the City's CCTA claim must be dismissed for failure to state a claim because the State of New York has adopted a forbearance policy on enforcing tax laws in sales to Native American cigarette retailers. As discussed above, the CCTA prohibits the sale and transport of unstamped, "contraband" cigarettes only if taxes are "required" by state law. Defendants contend that, as a result of the Department's forbearance policy, articulated in its Advisory Opinion of March 16, 2006, the tax set forth in New York Tax Law § 471(1)-(2) does not apply to cigarette sales by defendant wholesalers to reservation retailers. These cigarettes, therefore, are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

Page 15

not "required" to be stamped within the meaning of 18 U.S.C. § 2341, and are not contraband within the meaning of 18 U.S.C. § 2342. Without this state law requirement, defendants argue, no violation of the CCTA can occur.

[20] The Court finds defendants' arguments unpersuasive. The City's claim under the CCTA may be maintained because N.Y. Tax Law § 471(1)-(2) constitutes an "applicable" tax for the purposes of 18 U.S.C. § 2341. The Second Circuit has noted that a court's "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir.2000). The clear language of § 471(1) imposes a "tax on all cigarettes possessed in the state" except those cigarettes the state lacks the power to tax. Section 471(2) goes on to require that stamping agents "purchase stamps and affix such stamps in the matter prescribed to packages of cigarettes to be sold within the state." The plain, mandatory phrasing of the statute sets forth a requirement that stamping agents affix tax stamps to all cigarettes the state has the power to tax, which includes those sold by reservation retailers for re-sale to the public. See *Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.*, 512 U.S. at 61. In reaching this conclusion, the Court follows "[t]he preeminent canon of statutory interpretation" which requires a court to "presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (citation omitted).

New York Tax Law § 471, then, constitutes an "applicable" state tax for the purposes of the CCTA. Contraband cigarettes are defined in the CCTA as those that bear no evidence of payment of an "applicable" tax where the state requires such evidence. 18 U.S.C. § 2341. As courts have repeatedly held, the term "applicable" means "capable of being applied." See *City of New York v. Beretta U.S.A. Corp.*, 401 F.Supp.2d 244, 261 (E.D.N.Y.2005); *Snyder v. Buck*, 75 F.Supp. 902, 907 (D.D.C.1948).Section 471 is capable of being applied to the transactions at issue in this case. Whether the Department chooses to enforce it in a particular instance does not nullify the statute's requirements.

*12 The Court recognizes that the Department has publicly articulated a forbearance policy on the

collection of taxes from the sale of cigarettes by stamping agents to reservation retailers, and that a New York State court has upheld the rationality of that policy. See *In re of New York Assoc. of Convenience Stores v. Urbach*, 275 A.D.2d 520, 522, 712 N.Y.S.2d 222, 224 (N.Y.App.Div.2000). However, an enforcement decision by the Department does not serve to obviate state legislation. The New York Attorney General, through its representative, has advised this Court that N.Y. Tax Law § 471 presently requires stamps be placed on cigarettes sold by stamping agents to reservation retailers, and remains "in full effect." (Oct. 30, 2007 Tr. at 5.) The Attorney General also stated to the Court that "[t]his administration has no forbearance policy."(*Id.* at 6, 712 N.Y.S.2d 220.) In view of the plain language of the statute as well as representations by the Attorney General to this Court that New York Tax Law § 471 remains in effect, the Court declines to dismiss the City's CCTA claim.

Additionally, advisory opinions are issued by the Department at the request of an individual or entity. See New York State Department of Taxation and Finance, "Advisory Opinions," http://www.tax.state.ny.us/pubs_and_
bulls/advisory_opinions. The Court rejects defendants' argument that this kind of statement on enforcement, issued by a state agency and of limited applicability, nullifies the requirements of a statute passed by a state's legislature and signed by its governor. See, e.g., *LensCrafters, Inc. v. Wadley*, 248 F.Supp.2d 705, 737 (M.D.Tenn.2003) ("The court can see no basis for finding that the avowed benefits of a statute duly enacted by the legislature may be undermined by poor enforcement on the part of the executive branch. If such were the case, the executive branch would be in a position to invalidate any law with which it disagreed.") *aff'd*403 F.3d 798 (6th Cir.2005).

Other federal courts have concluded that claims under the CCTA alleging violations of N.Y. Tax Law may be maintained. In *United States v. Morrison*, 521 F.Supp.2d 246 (E.D.N.Y.2007), the court denied a motion to dismiss criminal charges under the CCTA brought against a reservation retailer for sales of unstamped cigarettes. In doing so, it addressed the defendant's argument relying on the Department's forbearance policy, stating:

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

Page 16

Defendant's interpretation is strained because it relies solely on the executive branch's enforcement policies rather than the applicable State laws, which clearly provide that Morrison's sale of cigarettes to non-native Americans on the reservation is a taxable event. Defendant's interpretation essentially nullifies the requirements of state law as that term is commonly understood and reads the legislature right out of the picture. Simply stated, states "require" certain conduct via duly enacted laws; the failure of the executive branch to enforce the law is not the same as saying that the legislative branch has repealed it.

*13 *Morrison,* 521 F.Supp.2d at 254. The court rejected the defendant's contention that the Department's forbearance policy vitiated statutory liability, and that he did not have fair notice of the violation. *Id.* at 254-55.

Similarly, in *United States v. Kaid,* the government sought prosecution under the CCTA of a group of individuals, including non-Native Americans who purchased large quantities of cigarettes and one stamping agent, for CCTA violations. 241 Fed. Appx. 747 (2d Cir.2007). In a summary order addressing the magistrate judge's decision below, the Second Circuit considered a defense raised by some defendants that the Department's forbearance policy "effectively 'de-taxed' sales of cigarettes to non-Native Americans on reservation land, thereby negating the element of 'contraband' necessary to a conviction for trafficking in contraband cigarettes under [the CCTA] 18 U.S.C. §§ 2341-2." *Id.* at 750. The Second Circuit noted:

> While it appears that New York does not enforce its taxes on small quantities of cigarettes purchased on reservations for personal use by non-Native Americans, nothing in the records supports the conclusion that the state does not demand that taxes be paid when, as in this case, massive quantities of cigarettes were purchased on reservations by non-Native Americans for re-sale.

*Id.* Although the facts of the instant case differ from those presented to the *Kaid* court, and rulings by summary order do not have precedential effect, the Second Circuit's analysis is relevant insofar as it supports a conclusion that the Department's policy does not completely foreclose liability under the CCTA for violations of New York Tax Law § 471.

Accordingly, the Court finds that the Department's forbearance policy does not bar liability under 18 U.S.C. § 2341 *et seq.* The City has sufficiently pled that the unstamped cigarettes sold by defendant wholesalers to reservation retailers are "contraband," in violation of the CCTA, because of the requirements set forth in N.Y. Tax Law § 471.

**2. Other CCTA Arguments**

Defendants also contend that the City, through this suit, is attempting to impermissibly regulate transactions that take place on Native American reservations. As discussed above, the Supreme Court has already concluded that a state may tax sales by reservation retailers to the public without unduly infringing on the sovereign rights of Native Americans on their reservation land. *See Milhelm Attea & Bros., Inc.,* 512 U.S. at 64 ("On-reservation cigarette sales to persons other than reservation Indians, however, are legitimately subject to state taxation."). Accordingly, this argument fails.

The Court declines to dismiss the City's claim against defendants under the CCTA.[FN3]

**D. CMSA Claim**

Defendants also move to dismiss the City's claim under New York's Cigarette Marketing Standards Act, New York Tax Law § 484(a) (1). That statute makes it unlawful for:

> *14 [A]ny agent, wholesale dealer or retail dealer, with intent to injure competitors or destroy or substantially lessen competition, or with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell, or sell cigarettes at less than cost of such agent wholesale dealer or retail dealer, as the case may be.

N.Y. Tax L. § 484(a)(1). The statute defines the "cost of such agent" as the "basic cost of cigarettes" plus general costs of doing business borne by the agent. N.Y. Tax L. § 483(b)(1)(A). In turn, the "basic cost of cigarettes" is defined as the invoice cost of cigarettes to the agent ... to which shall be added the full face value of any stamps which may be required

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

Page 17

by law." *Id.* § 483(a)(1). The City contends that defendants violate the CMSA by selling cigarettes to retailers at prices that do not include the cost of tax stamps required by law. In response, defendants essentially put forth the same arguments against the City's CSMA claim as they advanced against its CCTA claim: that defendants are not "required by law" to stamp cigarettes sold to reservation retailers in view of the Department's forbearance policy.

[21] As discussed above in addressing the City's CCTA claim, N.Y. Tax Law § 471 requires that tax stamps be affixed to cigarettes sold to reservation retailers for re-sale to the public. Thus, the "basic costs of cigarettes" and the "cost of such agent," for the purposes of § 483, include the costs of tax stamps required by § 471. The City has alleged that defendant wholesalers sell cigarettes to reservation retailers for re-sale to the public at prices that do not include the cost of tax stamps required by § 471. The City has set forth sufficient allegations to support its claim under the CMSA. Any questions regarding the defendants' intent to avoid tax collection or lessen competition are factual disputes not properly addressed in the context of this motion. Accordingly, the defendants' motions to dismiss the City's CMSA claim are denied.

**E. Public Nuisance Claim**

The City also brings a public nuisance claim against defendants, alleging that their supply of unstamped cigarettes to reservation retailers for re-sale endangers the health of City residents. (*See* Am Compl. ¶¶ 38-40, 62-63.) The City alleges that large quantities of "bootlegged" cigarettes provided by defendants are re-sold through street sellers as well as over the Internet, by telephone, and by mail. (*Id.*) In arguing that defendants' provision of unstamped cigarettes for re-sale to the public constitutes a nuisance, the City relies on the language of N.Y. Public Health Law § 1399-ll, which prohibits remote cigarette sales. The City also alleges that sellers of unstamped cigarettes are "major suppliers" to underage smokers, and that these sellers fail to comply with N.Y. Public Health Law § 1399-cc(3), which requires proof of age to ensure that cigarettes are only purchased by individuals at least eighteen years old. (*Id.* ¶ 6.)

**\*15** Defendants argue that the City has failed to

allege facts to support its nuisance claim and seeks to use the pretext of public health to address a tax issue. In opposing the City's claim, defendants rely primarily on *City of New York v. A.E. Sales LLC, et al.*, No. 03 Civ. 7715, 2005 WL 3782442 (S.D.N.Y. Feb. 9, 2005). In that case, the court dismissed a public nuisance claim brought by the City against cigarette sellers transacting with New York City residents through the Internet. The *A.E. Sales* court found that the City had failed to plead that defendants' activities were affecting a "considerable number of people," so as to satisfy the elements of a public nuisance claim at common law, where the City alleged that Internet sales accounted for 5.9 percent of industry volume in a given year. *Id.* at *2.

[22][23][24] In New York, public nuisance is defined as "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a matter such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Copart Indus. Inc., v. Consolidated Edison Co. of New York, Inc.*, 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968 (N.Y.1977) (citing *New York Trap Rock Corp. v. Town of Clarkston*, 299 N.Y. 77, 80, 85 N.E.2d 873, 875 (N.Y.1949)). "To be reckoned as 'considerable,' the number of persons affected need not be shown to be 'very great.' [It is] [e]nough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community." *People v. Rubenfeld*, 254 N.Y. 245, 247, 172 N.E. 485 (1930) (internal citation omitted); *see also Town of Mount Pleasant v. Van Tassell*, 7 Misc.2d 643, 166 N.Y.S.2d 458, 462 (N.Y.Sup.Ct.1957) (describing a public nuisance as one that "causes substantial annoyance and discomfort indiscriminately to many and diverse persons who are continually or may from time to time be in the vicinity"). Whether conduct "constitutes a public nuisance must be determined as a question of fact under all the circumstances." *New York Trap Rock Corp.*, 85 N.E.2d at 875.

The New York Court of Appeals has determined that a municipal corporation may "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." *New York Trap Rock Corp.*,

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

299 N.Y. at 84, 85 N.E.2d 873 ("[I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit.").*See also City of New York v. Berretta U.S.A. Corp.*, 315 F.Supp.2d 256, 276-77(E.D.N.Y.2004) ("[T]he City [of New York] is a proper party to bring an action to restrain a public nuisance that allegedly may be injurious to the health and safety of its citizens.") (quoting *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir.1989)).

*16 The City cites to N.Y. Public Health Law §§ 1399-ll and 1399-cc to support its claim that defendants' sale of unstamped cigarettes for subsequent re-sale is a public nuisance. These provisions address the unlawful shipment and transport of cigarettes. Section One of the statute prohibits cigarette vendors from shipping cigarettes to anyone in New York State who is not a person licensed as a cigarette tax agent or wholesale dealer; an export warehouse proprietor; or a person who is an officer, employee or agent of the government, acting in his or her official capacity. Section Two prohibits a carrier from knowingly transporting cigarettes to any person in the state, other than those listed in Section One, with narrow exceptions. New York Public Health Law § 1399-ll does not provide the City with standing to enforce its provisions in a criminal or civil capacity. Additionally, N.Y. Public Health Law § 1399-cc states that the sale of cigarettes can only be made to individuals over eighteen years of age who demonstrate photographic identification issued by a government entity.

[25] The Court finds that the City has adequately pled that the health of its residents may be endangered by the re-sale of cigarettes over the Internet, by mail, or by telephone. The language and legislative history of N.Y. Public Health Law §§ 1399-ll and 1399-cc supports a finding of a public nuisance claim for remote sales of cigarettes to New York City residents and underage smokers. The New York State legislature has explicitly found that "shipments of cigarettes sold via the Internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare to the funding of health care and to the economy of the state."N.Y. Pub. Health L. § 1399-ll (L.200, ch. 262 § 1). As public nuisance in New York is defined as "conduct or omissions which ... endanger or injure

the property, health, safety, or comfort of a considerable number of persons,"*Copart Indus., Inc.*, 41 N.Y.2d at 568, 394 N.Y.S.2d 169, 362 N.E.2d 968, the City may sustain a public nuisance claim based on allegations of illegal, remote sales to New York City residents that endanger their health. *New York Trap Rock Corp.*, 299 N.Y. at 83, 85 N.E.2d 873;*see also A.E. Sales*, at *6 ("Thus, by the language of the legislative findings, Plaintiff has adequately pled that the health of people may be endangered by the act of selling cigarettes over the Internet."); *see also Berretta*, 271 F.Supp.2d at 482 ("A wide variety of specific types of danger and injury to the public have been recognized in New York as public nuisances.").

The City also has sufficiently alleged that a "considerable number of people" are endangered by these remote sales. To support its claim, the City states that "perhaps as much as 15 percent of all smokers purchase their cigarettes from Internet sellers, street sellers and reservation sellers."(*Id.* ¶¶ 43-46.)The City links these smokers to the defendants by alleging that the majority of online cigarette merchants selling unstamped cigarettes are located on Native American reservations. (*Id.* ¶ 40.)Additionally, the City asserts that a major part of the defendants' business is the sale of unstamped cigarettes for re-sale to the public; 80 percent of the wholesale business of at least one defendant consists exclusively of sales to Native American retailers. (Am.Compl.¶ 38.)

*17 Although the City may ultimately be un able to establish these elements, its allegations are adequate to sustain its claim for the purposes of a motion pursuant to Rule 12(b)(6).*See Goldstein v. Pataki.* 516 F.3d at 56 (holding that "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level") (internal quotation marks omitted); *see Erickson v. Pardus* 127 S.Ct. at 2200.

[26][27][28] New York case law also suggests that an inquiry into causation may be appropriate when the alleged connection between the actions of the defendant and the resulting harm may be too attenuated to support a finding of liability. *See People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 309

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

A.D.2d 91, 95, 761 N.Y.S.2d 192, 196 (N.Y.App.Div.2003) (liability for an alleged public nuisance may be denied where the causal connection between the alleged business conduct and harm is too tenuous and remote) (citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (N.Y.2001)); *see also City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 346-47 (E.D.N.Y.2007) (discussing factual and proximate causation in a suit alleging public and statutory nuisance against out-of-state firearms retailers whose practices allegedly lead to the diversion of large numbers of guns into the secondary, illegal firearms market). Factual causation requires "proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right." *See, e.g., City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 346-47; *Hine v. Aird-Don Co.*, 232 A.D. 359, 250 N.Y.S. 75, 77 (N.Y.App.Div.1931); *McNulty v. Ludwig & Co.*, 153 A.D. 206, 138 N.Y.S. 84, 91 (N.Y.App.Div.1912); *Sullivan v. McManus*, 19 A.D. 167, 45 N.Y.S. 1079, 1080 (N.Y.App.Div.1897). Similarly, proximate causation demands a reasonable connection between defendants' alleged actions and the harm that followed. *People v. Strurm, Ruger & Co., Inc.*, 309 A.D.2d 91, 104, 761 N.Y.S.2d 192; *see also City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 346-47 ("Proximate causation embodies a policy requirement in some tort actions that a defendant's tortuous conduct be so causally sufficiently close to the harm suffered that it is just or fair to hold the defendant liable for the consequences of its actions."). When more than one party is alleged to have participated or created a public nuisance, joint and several liability for the resultant injury may be appropriate. *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 347 (citing *State v. Schenectady Chems. Inc.*, 103 A.D.2d 33, 479 N.Y.S.2d 1010, 1014 (N.Y.App.Div.1984)).

As an initial matter, defendants do not appear to challenge the City's allegations of factual causation and make only a passing argument regarding proximate causation, relying instead on contentions that state issues of public policy preclude the City's nuisance claim, and that the City has failed to allege a "considerable number of people" were injured by the defendants' activity. *See* Def. Joint Mem. at 24-26; Day Wholesale Mem. at 50-53. To the extent that defendants do challenge causation, the Court finds that the City's allegations are sufficient to support a

finding that defendants' conduct factually and proximately caused the City's injury. (*See* Am. Compl. ¶¶ 38-47; 60-65.) *See also City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. at 347 ("Whether specific acts or omissions meet this standard involves a fact-intensive inquiry, making it difficult to resolve the issue on a motion to dismiss on the pleadings."); *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666 (N.Y.1980) (noting in context of negligence action that issues of causation are generally for the fact finder to resolve). Accordingly, the defendants' motion to dismiss the City's public nuisance claim is denied.

### III. Necessary and Indispensable Parties

#### A. Standard of Review

*18[29] Defendants have also moved to dismiss the City's complaint pursuant to Fed.R.Civ.P. 12(b)(7). Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether a missing party is necessary within the meaning of Fed.R.Civ.P. 19. *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir.1999).

#### B. Defendants' Rule 19 Arguments

Defendants contend that this case should not proceed in the absence of "affected Indian nations" or New York State. The rights of Native Americans are implicated, according to defendants, because the City seeks to classify unstamped cigarettes shipped to reservations as contraband. Additionally, defendants argue New York State is necessary to this proceeding because "re-classification of unstamped cigarettes" implicates State policy.

Pursuant to Fed.R.Civ.P. 19, a court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. *See* Fed.R.Civ.P. 12(b)(7); *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123-24 (2d Cir.1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a)(1) provides, in relevant part:

A person who is subject to service of process and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))

whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a).

[30] If a party is necessary, but joinder would divest the court of jurisdiction, the court must consider whether dismissal is warranted under Rule 19(b), that is, whether the suit can proceed "in equity and good conscience" without the necessary party. See Fed.R.Civ.P. 19(b); Assoc. Dry Goods, 920 F.2d at 1124. In determining whether a party is indispensable, a court should consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b); see Seneca Nation of Indians v. New York, 383 F.3d 45, 48 (2d Cir.2004). The party moving for dismissal for failure to join an indispensable party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 494 (S.D.N.Y.2002) (quoting Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir.1994)).

**1. Native American Tribes as Necessary Parties**

*19 [31] Native American tribes in New York State are not necessary parties to this lawsuit. First, because their absence will not deny complete relief to the parties, Native American tribes are not required to be joined under Rule 19(a)(1)(A). If defendant wholesalers were to affix tax stamps to cigarettes

they sell to Native American retailers for re-sale to the public, and remit the applicable State taxes, the City will have secured its requested relief. Although defendants question whether such a remittance scheme may be practically executed given the history of Native American taxation in New York State, that dispute is not properly resolvable in the motion to dismiss context.

Second, because no Native American tribe has claimed "an interest relating to the subject of the action," they are not required to be joined under either prong of Rule 19(a)(2). See, e.g., Conntech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc., 102 F.3d 677, 682 (2d Cir.1996). Even if a Native American tribe claimed an interest, that interest would not be impeded by a disposition in this case. A judgment in the City's favor would not negate established tribal rights because Native American tribes do not have established rights in the sale of unstamped cigarettes by reservation retailers to the public. See Milhelm Attea & Bros., Inc., 512 U.S. at 64 ("On-reservation cigarette sales to persons other than reservation Indians, however, are legitimately subject to state taxation."); Washington v. Confederated Tribes of Colville Reservation, 447 U.S. at 159 ("[T]he State may validly require the tribal smokeshops to affix tax stamps purchased from the State to individual packages of cigarettes prior to the time of sale to nonmembers of the Tribe."). To the extent, that a tribe's sovereignty is implicated by a decision involving the tax status of goods sold by reservation retailers, the burden in this context is minimal. See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. at 483; Washington, 447 U.S. at 156-60. Any impact on Native American rights is further attenuated by the fact that this case is brought against wholesalers who sell to reservation retailers, rather than the reservation retailers themselves. See, e.g., Citizens Against Casino Gambling in Erie County v. Kempthorne, 471 F.Supp.2d 295, 315 (W.D.N.Y.2007) (Native American tribe was not a necessary party to lawsuit even though it may have some "interest relating to the subject matter of th[e] action" because a party is not necessary "unless that interest will, as a practical matter, be impaired or impeded by this suit.").

As the Court has found that Native American nations in New York State are not necessary parties, it declines to consider whether they are indispensable

--- F.Supp.2d ----

--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)

**(Cite as: — F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

under Rule 19(b). *See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir.2000)* ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).").

**2. New York State as a Necessary Party**

*20[32] Similarly, New York State is not a necessary party to this lawsuit. The State's absence will not deny complete relief to the parties. As discussed above, the City will secure the relief it seeks by defendants' stamping of cigarettes sold by reservation retailers for re-sale to the public. The Court recognizes that the State's involvement may be preferred by the defendants to execute any remedy secured by the City in this litigation. However, based on the arguments presented by both parties, the Court cannot conclude that complete relief requires the State's participation in this suit. For example, defendant wholesalers, based on their market knowledge, could allocate a certain percentage of their sales to reservation retailers as non-taxed and affix tax stamps to the remaining units sold in anticipation of re-sale to members of the public. Such a program, while not without its challenges, could afford the parties complete relief without the State's participation. *Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir.1996)* (finding that " 'complete relief' can be accorded even without the [the government], because nothing in the district court's statements or final judgment requires the [the government] to do anything or change any of its positions"). The defendants, moreover, may compensate the City for lost revenue resulting from its alleged unlawful activity without involving the State.

The State, moreover has not claimed any interest in this lawsuit pursuant to Rule 19(a)(1)(B) even though, as the Court recognized in its Order dated August 24, 2007, this lawsuit implicates the collection of tax revenue by the State of New York. The Attorney General for the State of New York was made aware of the issues raised in this case by the Court's August 24, 2007 Order and has declined to claim an interest, as *amicus curiae* or otherwise. (*See* Oct. 30, 2007 Tr. at 3 (State Attorney General's office represents to the Court that the State of New York has no intention of filing briefs in connection with the instant case).) *See Conntech Dev. Co., 102 F.3d at*

683 (finding that a state was not a necessary party in part because "the record reflects that the Government has meticulously observed a neutral and disinterested posture") (citation omitted). In view of the facts that New York State has explicitly declined to exercise any interest it has in relation to this pending litigation, and complete relief may be afforded among the present parties, the Court declines to find the State necessary to the instant case.

Even if this Court were to conclude that the State was necessary because complete relief could not be afforded among the existing parties, the State is not indispensable to this lawsuit. The Second Circuit has observed that courts should take a "flexible approach" under Rule 19(b) when deciding whether parties are indispensable, and that "very few cases should be terminated ... unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir.1987)* (citations omitted).

*21 In this case, the Court finds that the City's suit can proceed without the State "in equity and good conscience." Relief may be designed to lessen any prejudice to the State, as discussed above, and adequate judgment may be rendered in the State's absence. The City, moreover, will have no adequate remedy if the action is dismissed, which counsels against a finding of indispensability. Fed.R.Civ.P. 19(b). The Court concludes, therefore, that defendants have not carried their burden of demonstrating that the State is indispensable to this suit.

*CONCLUSION*

For the foregoing reasons, the Court denies defendants' motions to dismiss this lawsuit made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).

SO ORDERED.

> FN1. Defendants' motion makes a facial challenge to the City's Article III standing that appears to accept the jurisdictional facts pleaded, challenging only their sufficiency. *See Alliance for Envt'l Renewal, 436 F.3d at 88 n. 7.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.))**

FN2. Defendants also argue summarily that the Court lacks jurisdiction over the City's CCTA claim because there is no Article III "case or controversy," due to the existence of the Department's "forbearance policy." The Court rejects this contention. *See infra,* at 19-23.

FN3. This Memorandum does not reach defendants' contention that plaintiff's additional claim for aiding and abetting violations of the CCTA should be dismissed. The Court finds that this issue has not been adequately briefed by the parties in this case. Defendants may petition the Court to submit additional briefing on whether plaintiff's amended complaint fails to plead a claim for aiding and abetting a CCTA violation.

E.D.N.Y.,2008.

City of New York v. Milhelm Attea &amp; Bros., Inc.

--- F.Supp.2d ----, 2008 WL 1926686 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.